**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

AGUSTIN VALENZUELA GALLARDO,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 18-72593

Agency No.
A056-010-094

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 4, 2020
San Francisco, California

Filed August 6, 2020

Before: Eugene E. Siler,[*] Kim McLane Wardlaw,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Wardlaw

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Agustin Valenzuela Gallardo's petition for review of a decision of the Board of Immigration Appeals and vacated his order of removal, holding that 8 U.S.C. § 1101(a)(43)(S), which describes an aggravated felony "offense relating to obstruction of justice," requires a nexus to an ongoing or pending proceeding or investigation and that, therefore, the BIA's contrary construction of the statute was inconsistent with the statute's unambiguous meaning.

In a prior published opinion, the BIA found Valenzuela Gallardo removable on the ground that his conviction for being an accessory to a felony, in violation of California Penal Code § 32, was an obstruction of justice aggravated felony under 8 U.S.C. § 1101(a)(43)(S). Switching directions from its precedent, the BIA concluded that the existence of an ongoing proceeding was not an essential element of an offense relating to obstruction of justice. However, a prior panel of this court vacated the BIA's redefinition because it raised serious questions about whether the statute is unconstitutionally vague. On remand, the BIA issued a published decision concluding that obstruction of justice offenses included not only offenses that interfered with ongoing or pending investigations or proceedings, but also those that interfered with investigations or proceedings that were reasonably

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

foreseeable by the defendant. Valenzuela Gallardo again petitioned for review.

The panel began at *Chevron* Step Zero, where the court determines whether the *Chevron* framework applies at all. The panel noted amici's argument that the BIA's interpretation of the term "aggravated felony," which includes offenses related to obstruction of justice, is ineligible for *Chevron* deference because the term has dual application in both civil proceedings, including removal proceedings, and criminal proceedings, including increased maximum prison terms for illegal reentry. The panel explained that deferring to the BIA's construction of statutes with criminal applications raises serious constitutional concerns because only Congress has the power to write new federal criminal laws. However, the panel concluded that it was bound by the law of the case doctrine because the panel that decided Valenzuela Gallardo's prior petition for review had applied the *Chevron* framework, and no exceptions to the doctrine applied.

At *Chevron* Step One, the panel concluded that 8 U.S.C. § 1101(a)(43)(S) is unambiguous in requiring a nexus to an ongoing or pending proceeding or investigation. The panel rejected the Government's assertion that the court had already held that the statute is ambiguous in this regard. Next, the panel explained that the ordinary meaning of the term "obstruction of justice" when the statute was enacted in 1996 required a nexus to an *extant* investigation or proceeding. Looking to the term's relevant statutory context – which the panel concluded to be Chapter 73 of Title 18, entitled "Obstruction of Justice" – the panel further explained that almost all of the substantive provisions in Chapter 73 that existed in 1996 required a nexus to an ongoing or pending proceeding or investigation.

Because the panel concluded that § 1101(a)(43)(S) was unambiguous, it did not proceed to *Chevron* Step Two. The panel also noted that it would reach the same conclusion even if it were not to apply the *Chevron* framework.

Finally, the panel concluded that the statute under which Valenzuela Gallardo was convicted, California Penal Code § 32, is not a categorical match with obstruction of justice under § 1101(a)(43)(S) because the text of § 32 and its practical application demonstrate that it encompasses interference with proceedings or investigations that are not pending or ongoing. Accordingly, the panel vacated Valenzuela Gallardo's removal order.

---

## COUNSEL

Frank Sprouls (argued) and John E. Ricci, Law Office of Ricci & Sprouls, San Francisco, California, for Petitioner.

Rebecca Hoffberg Phillips (argued), Trial Attorney; John S. Hogan, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Amalia Wille and Judah Lakin, Van Der Hout Brigagliano & Nightingale LLP, San Francisco, California, for Amici Curiae American Immigration Lawyers Association, U.C. Davis School of Law Immigration Law Clinic, and Asian Americans Advancing Justice—Asian Law Caucus.

**OPINION**

WARDLAW, Circuit Judge:

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). In 1996, Congress expanded the list of crimes that the Immigration and Nationality Act (INA) defines as an "aggravated felony" to include "*an offense relating to obstruction of justice*, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." *Id.* § 1101(a)(43)(S) (emphasis added); *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 440(e)(8), 110 Stat. 1214, 1278; Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, § 321(a)(11), 110 Stat. 3009-546, 3009-628. In an en banc precedential decision issued over two decades ago, the Board of Immigration Appeals (BIA) held that "an offense relating to obstruction of justice" is defined by the federal obstruction of justice offenses listed under that title in 18 U.S.C. §§ 1501–18, almost all of which require a nexus to an ongoing criminal proceeding or investigation. *Matter of Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 892–94 (BIA 1999) (en banc). Our court approved that definition as applied to a state misdemeanor conviction for rendering criminal assistance. *Hoang v. Holder*, 641 F.3d 1157, 1164–65 (9th Cir. 2011).

Since then, in this very case, the BIA has twice changed that settled definition, each time expanding it in different ways to encompass the crime for which Agustin Valenzuela Gallardo was convicted: accessory to a felony in violation of California Penal Code § 32. A prior panel of our court vacated the BIA's first redefinition because it raised "serious constitutional concerns about whether the statute is

unconstitutionally vague," and remanded to the BIA so that it could "either offer a new construction of [§ 1101(a)(43)(S)] or, in the alternative, apply *Espinoza-Gonzalez*'s interpretation" to this case. *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 811, 824 (9th Cir. 2016) (*Valenzuela Gallardo I*). The BIA took our court up on its invitation to offer a new construction of § 1101(a)(43)(S), which again deviated from *Espinoza-Gonzalez*'s requirement of a nexus to an ongoing criminal proceeding or investigation.

We hold that the BIA's new construction is inconsistent with the unambiguous meaning of the term "offense relating to obstruction of justice" in the statute as enacted by Congress and, therefore, is an unreasonable construction of the statute. Accordingly, we grant the petition for review and vacate the order of removal.

## I.

### A.

Agustin Valenzuela Gallardo, a Mexican citizen, was admitted to the United States as a lawful permanent resident in 2002. In 2007, he pleaded guilty to being an accessory to a felony in violation of California Penal Code § 32, which reads:

> Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.

Cal. Penal Code § 32.  Although Valenzuela Gallardo was initially placed on parole, he was later sentenced to sixteen months in prison after he violated his parole conditions.

## B.

The Government subsequently placed Valenzuela Gallardo in removal proceedings and charged him as an aggravated felon for having committed an "offense relating to obstruction of justice" under § 1101(a)(43)(S). Valenzuela Gallardo moved to terminate the proceedings, arguing that his accessory conviction under California Penal Code § 32 was not an obstruction of justice offense within the meaning of the statute.

The Immigration Judge (IJ) denied the motion to terminate and ordered Valenzuela Gallardo removed.  The IJ relied primarily on the BIA's decision in *Matter of Batista-Hernandez*, 21 I. & N. Dec. 955, 961 (BIA 1997), which held that the federal accessory after the fact offense, 18 U.S.C. § 3, is an obstruction of justice aggravated felony under § 1101(a)(43)(S) if a sentence of one year or more is imposed.  The IJ reasoned that there was "no material difference" between California Penal Code § 32 and 18 U.S.C. § 3, so Valenzuela Gallardo's state accessory after the fact conviction also qualified as an aggravated felony under the INA.

The BIA dismissed Valenzuela Gallardo's ensuing appeal, finding that "the elements of 18 U.S.C. § 3 are substantially the same as the elements of California Penal Code § 32," and, thus, his crime constituted an obstruction of justice offense under *Espinoza-Gonzalez* and *Batista-Hernandez*.  The BIA explained that based upon "the crimes listed in 18 U.S.C. chapter 73, entitled 'Obstruction of Justice,'" an "offense relating to obstruction of justice"

includes "active interference with proceedings of a tribunal or investigation" or "action or threat of action" against individuals cooperating in these processes. It affirmed the removal order and later denied a motion for reconsideration. Valenzuela Gallardo petitioned this court for review.

While his petition for review was pending, we published our decision in *Hoang v. Holder*, which construed *Espinoza-Gonzalez* and *Batista-Hernandez* together to determine that the BIA had concluded that "accessory after the fact is an obstruction of justice crime when it interferes with an *ongoing* proceeding or investigation."[1] 641 F.3d at 1164 (emphasis altered). The BIA then *sua sponte* ordered Valenzuela Gallardo's case reopened for reconsideration in light of *Hoang*. Accordingly, we dismissed the petition for review for lack of jurisdiction. *See Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002) ("The BIA's granting of [a] motion to reopen means there is no longer a final decision to review.").

With Valenzuela Gallardo's case now back before it, the BIA switched directions, concluding for the first time in its consideration of the question that "the existence of [an ongoing criminal] proceeding[] is not an essential element of an offense relating to obstruction of justice." *Matter of Valenzuela Gallardo*, 25 I. & N. Dec. 838, 841 (BIA 2012) (internal quotation marks omitted). Instead, it defined obstruction of justice to mean an "affirmative and intentional attempt, motivated by a specific intent, to interfere with the

---

[1] *Hoang* explicitly declined to defer to the BIA's conclusion in *Batista-Hernandez* that 18 U.S.C. § 3 was a categorical match with § 1101(a)(43)(S) because "[w]hile we defer to the BIA's definitions of ambiguous terms in the INA, we do not defer to the BIA's every conclusion that a particular crime is a removable offense." 641 F.3d at 1163.

process of justice." *Id.* at 842 (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 894). Applying this definition, it concluded that Valenzuela Gallardo's accessory after the fact conviction was an aggravated felony under the INA, and once again dismissed his appeal. *Id.* at 844. Valenzuela Gallardo petitioned for a second time.

In our decision on that petition, *Valenzuela Gallardo I*, 818 F.3d at 816, we applied "the doctrines of constitutional avoidance and constitutional narrowing" at *Chevron* Step One. We held that the BIA's new construction of § 1101(a)(43)(S) "raise[d] grave constitutional concerns because it use[d] an amorphous phrase—'process of justice'—without telling us what that phrase means." *Id.* at 822. We explained that absent some "narrowing context," such as a nexus to an *ongoing* judicial proceeding, the BIA's definition of an offense relating to obstruction of justice raised serious vagueness concerns. *Id.* (citing the Supreme Court's then-recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which struck down the residual clause of the Armed Career Criminal Act as unconstitutionally vague). Because Congress had not made clear that § 1101(a)(43)(S) permitted such a "constitutionally doubtful interpretation," we did not afford *Chevron* deference to the BIA's construction of the obstruction of justice provision. *Id.* at 823 (quoting *Williams v. Babbit*, 115 F.3d 657, 663 (9th Cir. 1997)). Accordingly, we remanded the case to the BIA to provide a definition that was not "unworkably vague," or to apply the existing precedent of *Espinoza-Gonzalez*. *Id.* at 822, 824. In dissent, Judge Seabright noted that he would not apply the doctrine of constitutional avoidance, and concluded that because the BIA's definition of obstruction of justice was not impermissibly vague, he would "defer to the BIA's

reasonable, permissible, and plausible interpretation of § 1101(a)(43)(S)." *Id.* at 831 (Seabright, J., dissenting).

On remand, the BIA published its second opinion in this case, *Matter of Valenzuela Gallardo*, 27 I. & N. Dec. 449 (BIA 2018), in which it announced its third definition of "an offense relating to obstruction of justice." This time it concluded that obstruction crimes include those "crimes involving (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere with an investigation or proceeding that is ongoing, pending, or *reasonably foreseeable* by the defendant." *Id.* at 456 (emphasis altered and internal quotation marks omitted). Applying this new definition, the BIA once again concluded that Valenzuela Gallardo's California conviction was "categorically one for an aggravated felony offense relating to obstruction of justice," and dismissed the appeal. *Id.* at 461. Valenzuela Gallardo petitions for review for a third time.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a). "[W]e review *de novo* both purely legal questions and mixed questions of law and fact." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020) (quoting *Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013)). Only the "BIA's findings of fact [are reviewed] for substantial evidence." *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014).

## III.

This is a case at the interplay of our doctrines on *Chevron* deference and the application of the categorical approach. Valenzuela Gallardo is removable as charged only if his state

conviction under California Penal Code § 32 is a categorical match with "an offense relating to obstruction of justice" under § 1101(a)(43)(S). To determine whether that is the case, we must "focus solely on whether the elements of [Valenzuela Gallardo's] crime of conviction sufficiently match the elements of [a] generic" obstruction of justice offense under the INA. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

Ordinarily, the BIA's reasonable "construction of ambiguous statutory terms in precedential decisions is entitled to deference" under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Pirir-Boc v. Holder*, 750 F.3d 1077, 1081 (9th Cir. 2014). Thus, to define the elements of a generic "offense relating to obstruction of justice" under § 1101(a)(43)(S), we must first determine how, if at all, to apply *Chevron* deference to the BIA's most recent definition of this term that includes, in addition to interference with ongoing proceedings or investigations, interference with those proceedings "reasonably foreseeable by the defendant." *Valenzuela Gallardo*, 27 I. & N. Dec. at 460.

## A.

We begin at *Chevron* Step Zero, where we determine "whether the *Chevron* framework applies at all." *Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1086 n.3 (9th Cir. 2016). We have received briefing from amici[2] contending that the BIA's interpretation of the term "aggravated felony," which includes offenses related to obstruction of

---

[2] Amici include the American Immigration Lawyers Association, the U.C. Davis School of Law Immigration Law Clinic, and Asian Americans Advancing Justice–Asian Law Caucus.

justice, is ineligible for *Chevron* deference because the term "aggravated felony" has dual application in both civil proceedings, including removal under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1229b(a)(3), and criminal proceedings, including increased maximum prison terms for illegal reentry under 8 U.S.C. §§ 1326(b)(2) and 1327. *See Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1028 (6th Cir. 2016) (Sutton, J., concurring in part and dissenting in part) (explaining the criminal and civil implications of the definition of "aggravated felony" in the INA), *rev'd sub nom. Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017). Amici urge that when interpreting such dual application provisions in the INA, we should employ traditional tools of statutory construction, including the rule of lenity.

Deferring to the BIA's construction of a statute with criminal applications raises serious constitutional concerns. Because "[o]nly the people's elected representatives in Congress have the power to write new federal criminal laws," *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019), permitting executive officials to define the scope of criminal law could offend the doctrine of separation of powers, *see Esquivel-Quintana*, 810 F.3d at 1023 (majority opinion). Furthermore, ensuring that courts, rather than the BIA, interpret criminal laws precludes the BIA "from altering criminal laws back and forth over time." *Id.* at 1030 (Sutton, J., concurring in part and dissenting in part) (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980–85 (2005)).

Over the past three decades, the Supreme Court has occasionally addressed the propriety of deferring to an agency's construction of a dual application statute. In *United States v. Thompson/Center Arms Co.*, a plurality of the Court declined to afford *Chevron* deference to the

Bureau of Alcohol, Tobacco, and Firearms' interpretation of a civil tax law because that law could also carry criminal sanctions. 504 U.S. 505, 517–18 (1992). However, the Court followed up *Thompson/Center Arms* with two decisions granting *Chevron* deference to an agency's interpretation of a statute with criminal applications. *See United States v. O'Hagan*, 521 U.S. 642, 675–76 (1997) (deferring to the Securities and Exchange Commission's regulation in a criminal case); *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 703–04 & n.18 (1995) (deferring to the Department of Interior's interpretation of a provision of the Endangered Species Act that carried potential criminal sanctions). *But see Whitman v. United States*, 135 S. Ct. 352, 354 (2014) (Scalia, J., joined by Thomas, J., respecting the denial of certiorari) ("*Babbitt*'s drive-by ruling . . . deserves little weight.").

More recently, the Supreme Court has leaned decidedly against deferring to agencies' interpretations of dual application statutes. In *Leocal v. Ashcroft*, the Court considered the BIA's analysis of whether an immigrant's state DUI conviction was categorically an "aggravated felony." 543 U.S. 1, 3–4 (2004). As part of that analysis, the Court considered the BIA's construction of the term "crime of violence" under 18 U.S.C. § 16. *Id.* at 5 n.2. Although the Court could have reached materially the same result by applying *Chevron* deference to the BIA's then-precedential interpretation of "crime of violence," the Court did not even mention *Chevron*. *Compare id.* (observing that the BIA interpretation would require a mens rea of at least recklessness, which the state offense of conviction lacked), *with id.* at 11, 13 (holding that "crime of violence" could not be read to include the offense of conviction, but reserving the possibility than an otherwise identical offense with a

mens rea of at least recklessness would qualify). In a footnote, the Court further explained:

> Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.

*Id.* at 11 n.8 (citing *Thompson/Center Arms*, 504 U.S. at 517–18). Because the rule of lenity and *Chevron* deference are typically mutually exclusive, this footnote suggests that the Court looked unfavorably upon giving deference to the BIA's construction of the statute.[3]

---

[3] Statutory ambiguity is a trigger for applying both the rule of lenity and *Chevron* deference. However, we apply the rule of lenity when a criminal statute is ambiguous so that "legislatures, not courts" define the scope of the statute. *Crandon v. United State*s, 494 U.S. 152, 158 (1990). By contrast, we apply *Chevron* deference in construing ambiguity in other statutes because the lack of textual clarity is a signal that Congress expected an "agency to be able to speak with the force of law when it addresses [the textual] ambiguity." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). In other words, because lenity is a rule we apply to ensure that the legislature has the final say, and *Chevron* is a rule we apply to permit agencies to fill in the details of a statute, we do not typically apply both principles at the same time. *See Whitman*, 135 S. Ct. at 354 (Scalia, J., respecting the denial of certiorari) ("[O]nly the legislature may define crimes and fix punishments. Congress cannot, through ambiguity, effectively leave that function . . . to the administrative bureaucracy." (emphasis omitted)); *see also* Transcript of Oral Argument at 12, *Esquivel-Quintana v. Lynch*, 137 S. Ct. 1562 (2017) (Chief Justice Roberts stating that the rule of lenity and *Chevron* cannot "coexist" because, at least in that case, "[t]hey each point in the opposite direction based on the same predicate, which is a degree of

Furthermore, even though it has been presented with several opportunities to defer to the BIA's construction of a dual application statute, the Supreme Court has never done so. *See Torres v. Lynch*, 136 S. Ct. 1619 (2016) (determining the generic definition of an aggravated felony described in the INA without reference to *Chevron*); *Lopez v. Gonzales*, 549 U.S. 47 (2006) (same). *Compare* Br. for Resp. at 11–13, *Esquivel-Quintana*, 137 S. Ct. 1562 (No. 16-54) (urging the Court to defer to the BIA's construction of "aggravated felony"), *with Esquivel-Quintana*, 137 S. Ct. at 1568–73 (interpreting the statute without giving deference). In fact, in *Carachuri-Rosendo v. Holder*, the Court struck down the BIA's construction of an "aggravated felony" offense without referencing *Chevron*. 560 U.S. 563, 581 (2010); *see also Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790 (2020) (Gorsuch, J., respecting the denial of certiorari) (taking the position that *Chevron* does not apply to agency interpretations of criminal statutes).

Notwithstanding the Supreme Court's apparent reticence to defer to the BIA's interpretation of dual application statutes, our court has consistently applied the *Chevron* framework when considering the BIA's prior constructions of the statute at issue here, § 1101(a)(43)(S). *See, e.g.*, *Hoang*, 641 F.3d at 1161; *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1086 (9th Cir. 2008); *Salazar-Luviano v.*

---

ambiguity in the statutory provision"); William N. Eskridge, Jr. & Lauren E. Baer, *The Continuum of Deference: Supreme Court Treatment of Agency Statutory Interpretations From* Chevron *to* Hamdan, 96 Geo. L.J. 1083, 1115 (2008) (regarding "anti-deference" in the context of a criminal statute). However, some have discussed ways that the two rules may be harmonized. *See* Note, William T. Gillis, *An Unstable Equilibrium: Evaluating the "Third Way" Between Chevron Deference and the Rule of Lenity*, 12 N.Y.U. J.L. & Liberty 352 (2019).

*Mukasey*, 551 F.3d 857, 861–62 (9th Cir. 2008).  In addition, we have deferred to the BIA's construction of the statutory term "aggravated felony" in other contexts.  *See United States v. Flores*, 901 F.3d 1150, 1158 (9th Cir. 2018) (citing *Hoang*, 641 F.3d at 1160, in applying the *Chevron* framework to interpret a term in § 1101(a)(43)(G)). However, because *Hoang*, *Renteria-Morales*, *Salazar-Luviano*, and *Flores* all appear to have assumed that the *Chevron* framework applied, these cases did not explicitly address whether *Chevron* deference is constitutionally permissible in the context of dual application statutes.

The prior panel in *Valenzuela Gallardo I* implicitly recognized the tension between our history of applying the *Chevron* framework to interpret "aggravated felony," and the separation-of-powers concerns that guide interpretation of criminal statutes.  *See* 818 F.3d at 823 n.9.  Relying on *Leocal* and *Carachuri-Rosendo*, the panel expressly concluded that for such dual-application terms, there is "less reason to defer" to the BIA.  *Id.*

Nevertheless, the panel squarely answered the *Chevron* Step Zero question in the affirmative, stating: "We apply the *Chevron* framework where, as here, there is binding agency precedent on-point in the form of a published BIA opinion."**[4]** *Id.* at 815 (internal quotation marks omitted).  Moreover, the panel applied the *Chevron* framework to the same issue— interpretation of "obstruction of justice" in the INA—that we now confront.

---

**[4]** The panel reached its non-deferential result only at *Chevron* Step One, which addresses "whether Congress has directly spoken to the precise question at issue," 467 U.S. at 842.  *See Valenzuela Gallardo I*, 818 F.3d at 823–24.

Accordingly, although amici's arguments have much to offer, we are not free to take a fresh look at the *Chevron* Step Zero question. "[U]nder 'law of the case' doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (quoting *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)). Because the panel in *Valenzuela Gallardo I* applied the *Chevron* framework to the BIA's construction of the aggravated felony of an offense relating to obstruction of justice, and we do not believe any exceptions to the law of the case doctrine apply here, we must proceed to *Chevron* Step One.[5]

Nonetheless, both a de novo interpretation of the obstruction of justice provision utilizing traditional tools of statutory interpretation and a *Chevron* Step One analysis of the precise question before us—whether the BIA's new "reasonably foreseeable" definition is at odds with the plain meaning of the statute, which was not before the prior panel—lead us to the same conclusion: the statute is unambiguous in requiring an ongoing or pending criminal proceeding, and the Board's most recent interpretation is at odds with that unambiguous meaning.

---

[5] "[T]he law of the case doctrine is subject to three exceptions that may arise when '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005) (quoting *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002)). None of these exceptions applies here.

**B.**

At *Chevron* Step One, we ask "whether Congress has directly spoken to the *precise* question at issue." *Chevron*, 467 U.S. at 842 (emphasis added). The precise question at issue in this case is whether an offense relating to obstruction of justice under § 1101(a)(43)(S) requires a nexus to an ongoing or pending proceeding or investigation. We conclude that Congress has clearly answered this question in the affirmative.

**1.**

As an initial matter, the Government asserts that we should proceed to *Chevron* Step Two because we have already held that § 1101(a)(43)(S) is ambiguous as to whether it requires a connection with an ongoing proceeding or investigation. Not so. We did not previously have occasion to opine on this point because, prior to its first precedential opinion below, *see Valenzuela Gallardo*, 25 I. & N. Dec. 838, the BIA consistently construed obstruction of justice offenses as requiring a nexus to an ongoing proceeding. *Hoang*, 641 F.3d at 1164. And, our prior opinion, *Valenzuela Gallardo I*, expressly declined to address to whether § 1101(a)(43)(S) has a "temporal nexus requirement."[6] 818 F.3d at 822.

---

[6] Even under the BIA's prior construction of obstruction of justice in *Espinoza-Gonzalez*, the Third Circuit declined to defer to the agency's construction of the aggravated felony described in § 1101(a)(43)(S) because it concluded that the meaning of the statute is unambiguous. *Denis v. Att'y Gen.*, 633 F.3d 201, 209 (3d Cir. 2011); *see also Higgins v. Holder*, 677 F.3d 97, 103–04 (2d Cir. 2012) (per curiam) (discussing the split between our court and the Fifth Circuit, on the one hand, and the Third Circuit, on the other, as to whether to defer to *Espinoza-*

Because § 1101(a)(43)(S) does not expressly define "an offense relating to obstruction of justice," to determine whether the term is ambiguous, we must interpret the phrase using the normal tools of statutory construction. *See Esquivel-Quintana*, 137 S. Ct. at 1569. We determine how this term was understood "[a]t th[e] time" the Antiterrorism and Effective Death Penalty Act of 1996 was passed into law.**[7]** *Id.*

We start with the term's ordinary meaning. *Id.* When the statute was enacted in 1996, the ordinary meaning of "obstruction of justice" included "the crime or act of willfully interfering with the process of justice and law esp[ecially] by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial or legal officer or by furnishing false information in or otherwise impeding *an investigation or legal process*." Merriam-Webster's Dictionary of Law 337 (1996)

_____

*Gonzalez*); *Armenta-Lagunas v. Holder*, 724 F.3d 1019, 1022 (8th Cir. 2013) (same). After our decision in *Valenzuela Gallardo I*, the Seventh Circuit declined to defer to the definition of § 1101(a)(43)(S) that the BIA announced in *Valenzuela Gallardo*, 25 I. & N. Dec. 838, and instead deferred to the BIA's decision in *Espinoza-Gonzalez*. *Victoria-Faustino v. Sessions*, 865 F.3d 869, 876 (7th Cir. 2017); *see also Cruz v. Sessions*, 689 F. App'x 328, 329 (5th Cir. 2017) (per curiam) (declining to defer to the BIA's 2012 definition of § 1101(a)(43)(S) on the basis that it was "vacated" by *Valenzuela Gallardo I*).

**[7]** The Antiterrorism and Effective Death Penalty Act of 1996 amended the INA by adding that "an offense relating to obstruction of justice" constituted an aggravated felony if "a sentence of 5 years' imprisonment or more may be imposed." § 440(e)(8), 110 Stat. at 1278. This provision was amended a few months later with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 so that an obstruction of justice offense "for which the term of imprisonment is at least one year" constitutes an aggravated felony. § 321(a)(11), 110 Stat. at 3009-628.

(emphasis added); *see also Esquivel-Quintana*, 137 S. Ct. at 1569 (using Merriam-Webster's Dictionary of Law to determine the "ordinary meaning" of a different term, "sexual abuse," in § 1101). Because in 1996 the contemporaneous understanding of "obstruction of justice" required a nexus to an *extant* investigation or proceeding, it is unlikely that Congress intended to stretch the term "obstruction of justice" under § 1101(a)(43)(S), as the BIA has now stretched it, to include interference with proceedings or investigations that were merely "reasonably foreseeable to the defendant."

In addition to examining the ordinary understanding of "an offense relating to obstruction of justice," we look to the term's relevant statutory context to define its meaning. *See Torres*, 136 S. Ct. at 1626 ("[W]e must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" (quoting *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014)).

We conclude that Chapter 73 of Title 18, entitled "Obstruction of Justice," provides the relevant statutory context here. *See United States v. Calvert*, 511 F.3d 1237, 1243 (9th Cir. 2008) ("The placement of certain prohibited acts in [Chapter 73] strongly indicates that the intent to commit such an act amounts to an intent to obstruct justice."); *see also Flores v. Att'y Gen.*, 856 F.3d 280, 288–89 (3d Cir. 2017) (concluding that Chapter 73 provides the relevant statutory context for interpreting the term "obstruction of justice"); *Denis*, 633 F.3d at 209 (concluding that § 1101(a)(43)(S) is unambiguous in part because the phrase "obstruction of justice" is wholly defined by Title 18). Section 1101(a)(43)(S) refers to three offenses: "obstruction of justice," "perjury or subornation of perjury," and "bribery of a witness." Both "perjury or subornation of

perjury" and "bribery of a witness" correspond to the titles of specific chapters in Title 18. *See* 18 U.S.C. ch. 11 ("Bribery, Graft, and Conflicts of Interest"); 18 U.S.C. ch. 79 ("Perjury"). So, too, does "obstruction of justice": it corresponds to the title of Chapter 73 ("Obstruction of Justice"). We "do not believe Congress engaged in such tortuous drafting," *Flores*, 856 F.3d at 289, as to deviate from the pattern of linking the statutory term to the crimes identified in the same title.

The Government muddies otherwise clear waters by suggesting that 18 U.S.C. § 3, the federal accessory-after-the-fact statute codified outside Chapter 73, provides relevant statutory context as well. However, that Congress placed § 3 outside of Chapter 73 is strong evidence that it did not consider § 3 to provide relevant statutory context for defining "obstruction of justice."[8] *See Flores*, 856 F.3d

[8] The BIA cites *Virgin Islands v. Aquino*, 378 F.2d 540, 553 (3d Cir. 1967), to suggest that federal and state law have long recognized that being an accessory after the fact is an obstruction of justice offense. However, *Aquino* is not a case about whether a person who is an accessory after the fact obstructs justice. Rather, it is a case about whether a defendant who is charged as a principal to a crime can be convicted on a theory of liability of being an accessory after the fact. *Id.* at 553–54. *Aquino*'s dicta that an accessory "obstructs justice by giving comfort or assistance to the offender" cannot support the BIA's broad proposition that it was well established in 1996 that being an accessory to a crime was an obstruction of justice offense. In fact, none of the federal cases the BIA cites in its published opinion squarely held that an accessory crime constitutes an obstruction of justice offense. Rather, all of them address this issue only tangentially in dicta. *See United States v. Brown*, 33 F.3d 1002, 1004 (8th Cir. 1994) (distinguishing between a principal to a crime and an accessory after the fact); *United States v. Huppert*, 917 F.2d 507, 510 (11th Cir. 1990) (same); *United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977) (per curiam) (same); *United States v. Barlow*, 470 F.2d 1245, 1252–53 (D.C. Cir. 1972) (same); *see also United States v. Balano*, 618 F.2d 624, 631 (10th Cir. 1979)

at 289 & n.38 (explaining that where Congress chose to codify § 3 is particularly relevant "because Title 18 was enacted as positive law and accordingly approved by Congress."); *see also* Tobias A. Dorsey, *Some Reflections on Not Reading the Statutes*, 10 Green Bag 2d 283, 286–87 (2007) (describing the relevance of the Statutes at Large versus the United States Code, and the historical development of enacting the latter into positive law). Thus, it is Chapter 73—and only that chapter—that provides the relevant statutory context for assessing the meaning of obstruction of justice in 1996.

Of the substantive provisions in Chapter 73 that existed when § 1101(a)(43)(S) was enacted, almost all of them required a nexus to an ongoing or pending proceeding or investigation.**[9]** *See Espinoza-Gonzalez*, 22 I. & N. Dec.

---

(discussing 18 U.S.C. § 3 within the context of determining when a crime ends so that a defendant may be convicted of being an accessory after the fact).

**[9]** We previously explained that "[a]ll of Congress's express examples of obstruction of justice contemplate ongoing proceedings or investigations or are otherwise sufficiently specific to provide notice of what conduct is prohibited." *Valenzuela Gallardo I*, 818 F.3d at 823. As examples of provisions that fall into the latter category, we cited subsections of 18 U.S.C. § 1512, which we discuss in the paragraphs to follow, and 18 U.S.C. § 1519, which postdates the passage of § 1101(a)(43)(S) and is therefore not relevant to our analysis here. *Id.* at 821.

At the time § 1101(a)(43)(S) was enacted into law in April 1996, Chapter 73 consisted of some version of today's 18 U.S.C. §§ 1501–14 and §§ 1515–17. Several provisions of Chapter 73 defined substantive offenses that required a nexus to an ongoing or pending proceeding or investigation. *See* 18 U.S.C § 1501 (assault on a process server); § 1502 (resistance to an extradition agent); § 1504 (influencing a juror by writing); § 1505 (obstruction of proceedings before departments,

at 892 ("In general, the obstruction of justice offenses listed in [Chapter 73] have as an element interference with the proceedings of a tribunal or require an intent to harm or retaliate against others who cooperate in the process of justice or might otherwise so cooperate."). Therefore, the norm in Chapter 73 is that an offense relating to obstruction

---

agencies, and committees); § 1506 (theft or alteration of record or process; false bail); § 1507 (prohibiting picketing or parading "with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty"); § 1508 (recording, listening to, or observing proceedings of grand or petit juries while deliberating or voting); § 1509 (obstruction of court orders); § 1510 (obstruction of existing criminal investigations); § 1516 (obstruction of a federal auditor "in the performance of official duties"); § 1517 (obstruction of the examination of a financial institution); *see also* 18 U.S.C. § 1513 (prohibiting retaliation against a witness, and contemplating that a proceeding or investigation is either ongoing or has already been completed).

18 U.S.C. § 1511, which prohibits the corruption of state officials in connection with a conspiracy to prevent the enforcement of anti-gambling laws, contains language that is similar to § 1503, the so-called catchall provision of Chapter 73. Prosecutors used § 1511 to pursue efforts by organized crime organizations to bribe local officials to investigate gambling operations run by their competitors, s*ee United States v. Riehl*, 460 F.2d 454, 459 (3d Cir. 1972), or to prevent the investigation of their own operations, *see United States v. Crockett*, 514 F.2d 64, 73 (5th Cir. 1975). In light of the way in which this provision was used, and because, as we discuss below, in 1996, Chapter 73's catchall provision was understood to require a nexus to ongoing or pending investigations or proceedings, Congress likely understood § 1511 as contemplating a nexus to ongoing or pending investigations or proceedings. Finally, 18 U.S.C. §§ 1514 and 1515 are either definitional or otherwise do not describe substantive offenses.

Thus, with the exception of § 1512, which we discuss below, all the substantive provisions of Chapter 73 define obstruction of justice to require a nexus to an ongoing or pending investigation or proceeding.

of justice requires a nexus to an ongoing or pending proceeding or investigation.

## 2.

Two provisions of Chapter 73 merit further discussion. First, 18 U.S.C. § 1512, Chapter 73's witness intimidation provision, states that "an official proceeding need *not* be pending or about to be instituted at the time of the offense."[10] (emphasis added).  The BIA relies on this provision to conclude that obstruction of justice, as defined in Chapter 73, does not necessarily require a nexus to an ongoing or pending proceeding.  However, Congress's explicit instruction that § 1512 reach proceedings that are not pending at the time of commission of the act only underscores that the common understanding at the time § 1101(a)(43)(S) was enacted into law was that an obstruction offense referred only to offenses committed while proceedings were ongoing or pending.  If that were not the case, it would not have been necessary for Congress to make clear that § 1512 operates differently than the other provisions in Chapter 73.  Thus, contrary to the BIA's conclusion, § 1512 is the exception that proves the rule: "an offense relating to obstruction of justice" requires a nexus to an ongoing or pending proceeding.

Second, 18 U.S.C § 1503, Chapter 73's so-called catchall provision, covers anyone who "influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."  Though this language is broad, by 1996 the Supreme Court had made

---

[10] Although this language is currently codified at 18 U.S.C. § 1512(f)(1), in 1996 it was codified at § 1512(e)(1). *See* 18 U.S.C. § 1512 (1994).

clear for over a century that the catchall provision referred only to interference with ongoing or pending proceedings. In *Pettibone v. United States*, 148 U.S. 197, 203–04 (1893), the Supreme Court considered whether criminal defendants could be convicted under a predecessor to Chapter 73's catchall provision if they lacked knowledge of, and therefore the intent to interfere with, district or circuit court proceedings. The Court ruled that the crime of obstruction of justice required a nexus to an ongoing judicial proceeding of which the defendant was aware. The Court reasoned:

> The obstruction of the due administration of justice in any court of the United States, corruptly or by threats or force, is indeed made criminal, but such *obstruction can only arise when justice is being administered*. Unless that fact exists, the statutory offense cannot be committed, and while, with knowledge or notice of that fact, the intent to offend accompanies obstructive action, without such knowledge or notice the evil intent is lacking.

*Id.* at 207 (emphasis added). That obstruction of justice requires a nexus with an ongoing proceeding was reinforced by our survey of circuit court rulings addressing this issue roughly 90 years later, where we found that "[n]o case interpreting [Chapter 73's catchall provision] has extended it to conduct which was not aimed at interfering with a *pending* judicial proceeding." *United States v. Brown*, 688 F.2d 596, 598 (9th Cir. 1982) (emphasis added).

The year before § 1101(a)(43)(S) was enacted, the Supreme Court again confirmed this longstanding interpretation of Chapter 73's catchall provision in *United*

*States v. Aguilar*, 515 U.S. 593 (1995). The Court explained that *Pettibone* stood for the proposition that "a person lacking knowledge of a *pending* proceeding necessarily lacked the evil intent to obstruct." *Id.* at 599 (emphasis added). After citing the above-quoted passage from *Brown* approvingly, the Court added, "as in *Pettibone*, if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* Given its construction of *Pettibone* and its approving citation of our decision in *Brown*, *Aguilar* stands for the proposition that Chapter 73's catchall provision requires a nexus to an ongoing or pending proceeding. Thus, at the time of enactment, "an offense relating to obstruction of justice" in § 1101(a)(43)(S) had a nexus requirement.

Both the BIA and the Government point to two more-recent Supreme Court decisions to argue that we should interpret the catchall provision, § 1503, to cover interference with *reasonably foreseeable* proceedings. However, neither case is apposite.

In *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005), the Supreme Court considered the reach of 18 U.S.C. § 1512, Chapter 73's witness tampering provision, which, as discussed above, provides that a proceeding "need not be pending or about to be instituted at the time of the offense." The Court explained that although "it is . . . one thing to say a proceeding need not be pending or about to be instituted at the time of the offense, [it is] quite another to say a proceeding need not even be foreseen." *Id.* at 707–08 (internal quotation marks omitted). The Government reads this language to suggest that a reasonably foreseeable proceeding could satisfy the nexus requirement for all of the offenses in Chapter 73. However, because 18 U.S.C. § 1512 is an *exception* to Chapter 73's general rule

that obstruction requires a nexus to an ongoing or pending proceeding, *Arthur Andersen*'s interpretation of this provision is inapplicable to this case. Furthermore, that the Court read any nexus requirement at all into § 1512, even though the text of the statute suggests none is necessary, supports the notion that obstruction of justice offenses require a tight nexus to a proceeding. *Cf. Aguilar*, 515 U.S. at 600 (counseling that we should "exercise[] restraint" and interpret obstruction of justice offenses narrowly). Thus, *Arthur Andersen* confirms our view that an offense relating to obstruction of justice under § 1101(a)(43)(S), which does not contain the limiting language of § 1512, requires a nexus to an ongoing or pending proceeding.

More recently, in *Marinello v. United States*, 138 S. Ct. 1101, 1104 (2018), the Court interpreted 26 U.S.C. § 7212, which prohibits obstructing "the due administration of the [Internal Revenue Code]." The Court explained that to establish obstruction under this statute, "the Government must show that the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then *reasonably foreseeable* by the defendant." *Id.* at 1110 (emphasis added) (citing *Arthur Andersen*, 544 U.S. at 703, 707–08). The BIA suggests that because the text of § 7212 is similar to the text of Chapter 73's catchall provision, *Marinello* shows that a nexus to a reasonably foreseeable proceeding is sufficient under § 1101(a)(43)(S).

We agree that *Marinello* settles any concern that defining obstruction of justice to include interference with a "reasonably foreseeable" proceeding is unconstitutionally vague. However, *Marinello* does not alter our analysis here. Although the Court noted the similarities in language between § 7212 and the catchall provision of Chapter 73, it emphasized that the "the language and history of [§ 7212]

differ[ed]" from the obstruction of justice provisions it had interpreted in cases like *Aguilar*, which concerned § 1503. *Id.* at 1109.  Furthermore, in arriving at the conclusion that a nexus to a "reasonably foreseeable" proceeding was sufficient under § 7212, the Court relied not on any of its precedents about Chapter 73's catchall provision, but rather on *Arthur Andersen*, a case about Chapter 73's unusual witness tampering provision, § 1512. *Id.* at 1110.  *Marinello* therefore sheds little light on the meaning of § 1503.

But even if *Arthur Andersen* and *Marinello* were on point, they would not be helpful here.  To determine whether Congress has clearly spoken to the question presented in this case, we are confined to the meaning of the words of the catchall provision "[a]t th[e] time" § 1101(a)(43)(S) was passed into law.  *Esquivel-Quintana*, 137 S. Ct. at 1569. Because these cases were decided after 1996, they do not shed much light on the settled meaning at the time of enactment of "obstruction of justice," and therefore have limited value in answering the question before us.  *See id.* at 1571–72 (relying on state statutes as they existed in 1996 to interpret another aggravated felony provision); *see also Neder v. United States*, 527 U.S. 1, 22–23 (1999) (regarding the presumption that when Congress uses a phrase with a "well-settled" meaning, it adopts that definition of the phrase).  That the catchall provision required a nexus to ongoing or pending proceedings at that time confirms our conclusion that an "offense relating to obstruction of justice" in § 1101(a)(43)(S) also requires such a nexus.

**3.**

Finally, the Government suggests that even if the statutory context cabins "obstruction of justice" to interference with pending or ongoing proceedings, we should read § 1101(a)(43)(S) more broadly because it refers

to "an offense *relating to* obstruction of justice." (emphasis added). Recently, the Supreme Court considered the BIA's interpretation of another provision in the INA that used the phrase "relating to." In *Mellouli v. Lynch*, the Court explained that although the phrase "relating to" may be broad, the context of the statute "may 'tug . . . in favor of a narrower reading'" of the phrase. 135 S. Ct. 1980, 1990 (2015) (alteration in original and brackets omitted) (quoting *Yates v. United States*, 135 S. Ct. 1074, 1083 (2015)). "Context does so here," too, *id.*, because the common understanding from the time of enactment, statutory context, and judicial precedent pre-1996 all point to one conclusion: "obstruction of justice" requires a nexus to an ongoing proceeding, *see id.* (noting that Congress's long-established understanding of a particular term counsels in favor of a narrower reading of "relating to").[11]

Because § 1101(a)(43)(S) unambiguously does not extend to cover intentional interference with "reasonably foreseeable" proceedings or investigations, we conclude our analysis here and do not proceed to *Chevron* Step Two to determine whether the agency's interpretation "is a reasonable choice within a gap left open by Congress," 467 U.S at 866.

---

[11] Relying on our prior decision in *Valenzuela Gallardo I* to explain the dangers of an overbroad reading of "an offense relating to obstruction of justice," the Third Circuit recently explained that the phrase "relating to" does not remove the requirement that an offense under § 1101(a)(43)(S) have a nexus to a pending judicial proceeding. *Flores*, 856 F.3d at 290–91; *see also id.* at 293 n.63 (characterizing any language to the contrary in the Third Circuit's prior opinion in *Denis* as dicta).

**4.**

In light of this statutory interpretation analysis, the BIA's proffered reasonably foreseeable standard cannot stand. We would reach the same conclusion even if we were not applying the *Chevron* framework: In 1996, when Congress enacted § 1101(a)(43)(S) into law, an offense relating to obstruction of justice unambiguously required a nexus to an ongoing or pending proceeding or investigation.

**C.**

"[Having] determine[ed] the elements of the generic crime listed in § 1101(a)(43)(S), we next identify the elements of [Valenzuela Gallardo's] specific crime of conviction." *Hoang*, 641 F.3d at 1161 (quoting *Salazar-Luviano*, 551 F.3d at 860). "We do not defer to the BIA's interpretations of state law . . . and instead must review de novo whether the specific crime of conviction meets the INA's definition of an aggravated felony." *Id.* (quoting *Salazar-Luviano*, 551 F.3d at 860–61). "If the statute of conviction criminalizes conduct that would not satisfy the federal definition of the crime at issue, then the conviction does not qualify as a predicate offense under the categorical approach." *Id.* (quoting *Fregozo v. Holder*, 576 F.3d 1030, 1035 (9th Cir. 2009)).

The text of California Penal Code § 32 is not a categorical match with obstruction of justice under § 1101(a)(43)(S) because California's statute encompasses interference with proceedings or investigations that are not pending or ongoing. Under California's accessory-after-the-fact statute, a defendant can be found guilty for helping a principal to a felony to escape "arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony," regardless of whether a proceeding

or investigation has in fact been initiated and regardless of whether the defendant knows such a proceeding has been instituted. Cal. Penal Code § 32.

This broad language sweeps in many acts that fall outside the scope of § 1101(a)(43)(S). For example, in *People v. Riley*, 20 Cal. App. 4th 1808, 1815 (1993), the defendant was convicted under California Penal Code § 32 for "attempting to dispose of the gun" that had been used in a murder. *Cf. Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 191–92 (2007) (surveying state judicial decisions to interpret the scope of a state statute). At the time the defendant in *Riley* disposed of the gun, he might have imagined that the police would one day want to investigate the murder. But there was no evidence that he was aware that there were proceedings or investigations ongoing or pending at the time of his criminal act.[12] *Riley*, 20 Cal. App. 4th at 1815.

Both the text of California Penal Code § 32 and its practical application, as shown in *Riley*, demonstrate that Valenzuela Gallardo's state statute of conviction covers offenses that fall well outside the definition of an "offense relating to obstruction of justice" under § 1101(a)(43)(S). They are therefore not a categorical match.

---

[12] The BIA suggests that Valenzuela Gallardo's state conviction is a categorical match with the federal offense because 18 U.S.C. § 3 is a crime obstructing justice and California Penal Code § 32 is a categorical match with 18 U.S.C. § 3. However, "[u]nder the categorical approach, we compare the elements of the statute of conviction with the *federal definition of the crime* to determine whether conduct proscribed by the state statute is broader than the generic federal definition." *Hoang*, 641 F.3d at 1159–60 (emphasis added, brackets omitted, and citation and internal quotation marks omitted). Thus, the correct comparison is between California Penal Code § 32 and the language of § 1101(a)(43)(S).

## IV.

Because "obstruction of justice" under § 1101(a)(43)(S) unambiguously requires a nexus to ongoing or pending proceedings, and California Penal Code § 32 does not, Valenzuela Gallardo's state criminal conviction is not a categorical match with the aggravated felony offense charged in his Notice to Appear.[13]  Accordingly, we grant the petition for review and vacate the removal order.

**PETITION GRANTED; VACATED.**

---

[13] Because "a statute is divisible *only* when it '*list[s]* elements in the alternative, and thereby define[s] multiple crimes,'" *United States v. Martinez-Lopez*, 864 F.3d 1034, 1039 (9th Cir. 2017) (en banc) (emphases added) (quoting *Mathis*, 136 S. Ct. at 2249), and California Penal Code § 32 does not itself list elements in the alternative, the modified categorical approach is not applicable in this case.