**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FERNANDO CORDERO-GARCIA, AKA Fernando Cordero, | No. 19-72779 |
| *Petitioner*, | |
| | Agency No. A014-690-577 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | OPINION |
| *Respondent.* | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 11, 2022
San Francisco, California

Filed August 15, 2022

Before: Andrew D. Hurwitz and Lawrence VanDyke,
Circuit Judges, and Barry Ted Moskowitz,* District Judge.

Opinion by Judge Moskowitz;
Dissent by Judge VanDyke

---

* The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Immigration

Granting Fernando Cordero-Garcia's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that dissuading or attempting to dissuade a witness from reporting a crime, in violation of California Penal Code ("CPC") § 136.1(b)(1), is not a categorical match to "an offense relating to obstruction of justice" aggravated felony under 8 U.S.C. § 1101(a)(43)(S), and therefore, Cordero-Garcia's CPC § 136.1(b)(1) convictions did not render him removable.

In 2012, the BIA concluded that Cordero-Garcia's CPC § 136.1(b)(1) convictions were offenses relating to obstruction of justice under § 1101(a)(43)(S). In 2016, this court decided *Valenzuela Gallardo v. Lynch* ("*Valenzuela Gallardo I*"), 818 F.3d 808 (9th Cir. 2016), holding that the BIA's most recent definition of "an offense relating to obstruction of justice" raised grave constitutional concerns and remanding to the BIA. In light of *Valenzuela Gallardo I*, and after Cordero-Garcia filed a petition for review, this court granted an unopposed motion to remand. The BIA then decided *Matter of Valenzuela Gallardo*, 27 I. & N. Dec. 449 (BIA 2018), modifying its definition of "an offense relating to obstruction of justice" to include: "offenses covered by chapter 73 of the Federal criminal code or any other Federal or State offense" involving certain conduct motivated by a specific intent—as relevant here—"to interfere either in an investigation or proceeding that is

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ongoing, pending, or reasonably foreseeable by the defendant."

Applying *Matter of Valenzuela Gallardo* to Cordero-Garcia's case on remand, the BIA concluded that CPC § 136.1(b)(1) was an aggravated felony offense relating to obstruction of justice. After Cordero-Garcia petitioned for review, this court decided *Valenzuela Gallardo v. Barr* ("*Valenzuela Gallardo II*"), 968 F.3d 1053 (9th Cir. 2020), holding that "obstruction of justice" under § 1101(a)(43)(S) unambiguously requires a nexus to ongoing or pending proceedings.

In light of *Valenzuela Gallardo II*, the panel concluded that CPC § 136.1(b)(1) is not a categorical match to "an offense relating to obstruction of justice" because—as the parties agreed—the California statute is missing a nexus to an ongoing or pending proceeding or investigation.

Before this court, the government argued for the first time that *Valenzuela Gallardo II* left untouched the first prong of the BIA's definition from *Matter of Valenzuela Gallardo*—"offenses covered by chapter 73 of the Federal criminal code." Under the government's view, an offense "covered by chapter 73" qualifies as "an offense relating to obstruction of justice" under § 1101(a)(43)(S), with or without a nexus to an ongoing or pending proceeding or investigation. The government also argued that CPC § 136.1(b)(1) is a categorical match to 18 U.S.C. § 1512—tampering with a witness, victim, or an informant—a chapter 73 offense that does not require a nexus to an ongoing or pending proceeding or investigation.

The panel rejected the government's new position as flatly inconsistent with *Valenzuela Gallardo II*'s

requirement of a nexus to an ongoing or pending proceeding or investigation.  The panel also wrote that the government conceded that the BIA did not analyze whether Cordero-Garcia's CPC § 136.1(b)(1) conviction was a categorical match with § 1512, and so the panel could not deny the petition on these grounds.  In any event, the panel concluded that CPC § 136.1(b)(1) is not a categorical match with § 1512 because the California statute lacks the requirement, in § 1512(b)(3), that an individual "uses intimidation, threatens, or corruptly persuades another person," or "engages in misleading conduct toward another person."

Dissenting, Judge VanDyke wrote that this case well illustrates why he has not been shy in criticizing this court's abysmal and indefensible immigration precedents.  Judge VanDyke described how, since 2011, this court has been whipsawing the BIA, doing everything in the court's power (and much not) to upset the BIA's consistent and reasonable interpretation of "an offense related to obstruction of justice" under 8 U.S.C. § 1101(a)(43)(S).  And while binding precedent previously addressed the second prong of the BIA's definition, this panel was free to consider the first prong—whether CPC § 136.1(b)(1) is "covered by" 18 U.S.C. § 1512(b)(3).  As to that question, Judge VanDyke concluded that CPC § 136.1(b)(1) is a categorical match for § 1512(b)(3), explaining that the majority erred in concluding that the California statute reaches "innocent persuasion."  Specifically, the majority ignored numerous California cases explicitly saying that CPC § 136.1(b)(1) proscribes only "culpable conduct" and not innocent behavior.  The majority also failed to point to a single case in which California courts have applied CPC § 136.1(b)(1) to innocent behavior, relying instead on a California case construing an altogether different offense.

## COUNSEL

Michael K. Mehr (argued), Mehr & Soto LLP, Santa Cruz, California, for Petitioner.

Rebecca Hoffberg Phillips (argued), Trial Attorney; John S. Hogan, Assistant Director; Brian Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

MOSKOWITZ, District Judge:

This petition for review presents the following question: is dissuading or attempting to dissuade a witness from reporting a crime, in violation of California Penal Code ("CPC") § 136.1(b)(1), "an offense relating to obstruction of justice" under 8 U.S.C. § 1101(a)(43)(S), and thus an "aggravated felony" for purposes of the Immigration and Nationality Act ("INA")? Applying the categorical approach, we conclude that CPC § 136.1(b)(1) is not a categorical match to "an offense relating to obstruction of justice" under § 1101(a)(43)(S), which requires a nexus to an ongoing or pending proceeding or investigation, or to the federal witness tampering statute, 18 U.S.C. § 1512(b)(3), which requires the use of intimidation, threats or corrupt persuasion. Accordingly, we grant the petition for review and remand.

### I.

Fernando Cordero-Garcia, a native and citizen of Mexico, was admitted to the United States as a lawful

permanent resident on July 2, 1965. On April 24, 2009, Cordero-Garcia was convicted of two counts of CPC § 136.1(b)(1) and sentenced to two years of imprisonment. Cordero-Garcia was also convicted of one count of sexual battery without restraint in violation of CPC § 243.4(e)(1), and one count of sexual exploitation by a psychotherapist or drug abuse counselor in violation of California Business and Professions Code ("CBPC") § 729(a).

On November 29, 2011, the Department of Homeland Security ("DHS") served Cordero-Garcia with a Notice to Appear, alleging that he had "been convicted of an aggravated felony as defined in [§ 1101(a)(43)(S)], an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." On December 21, 2011, DHS served Cordero-Garcia with additional charges of deportability, alleging that he had also "been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct."

Cordero-Garcia moved to terminate his removal proceedings on the ground that he was not removable, or in the alternative, moved for cancellation of removal. On June 27, 2012, the immigration judge ("IJ") sustained the charges of removability against Cordero-Garcia, denied his application for cancellation of removal, and ordered him removed. The IJ held that Cordero-Garcia's CPC § 136.1(b)(1) convictions were offenses relating to obstruction of justice, and that his CPC § 243.4(e)(1) and CPC § 136.1(b)(1) convictions were crimes of moral turpitude. The IJ declined to reach the issue of whether Cordero-Garcia's CBPC § 729(a) conviction was also a crime of moral turpitude. On November 27, 2012, the Board of Immigration Appeals ("BIA") dismissed Cordero-

Garcia's appeal. Upholding the IJ's determination that Cordero Garcia's CPC § 136.1(b)(1) convictions were offenses relating to obstruction of justice, the BIA held that "a crime may relate to obstruction of justice within the meaning of [§ 1101(a)(43)(S)] irrespective of the existence of an ongoing criminal investigation or proceeding."

On March 31, 2016, we decided *Valenzuela Gallardo v. Lynch* ("*Valenzuela Gallardo I*"), 818 F.3d 808 (9th Cir. 2016), which considered the BIA's new definition of "an offense relating to obstruction of justice" under § 1101(a)(43)(S) as the "the affirmative and intentional attempt, with specific intent, to interfere with the process of justice." *Id.* at 811. We held that the BIA's new definition raised "grave constitutional concerns" because it used "an amorphous phrase—'process of justice'—without telling us what that phrase means." *Id.* at 822. We remanded to the BIA to either offer a new construction of § 101(a)(43)(S) or apply its prior interpretation from *In Re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999).[1] *Id.* at 824.

In light of *Valenzuela Gallardo I*, and after Cordero-Garcia filed a petition for review with this court, on July 10, 2017, we granted an unopposed motion to remand the case to the BIA. Meanwhile, on September 11, 2018, in *Matter of Valenzuela Gallardo*, the BIA had modified its definition of "an offense relating to obstruction of justice" to include:

> offenses covered by chapter 73 of the Federal
> criminal code or any other Federal or State

---

[1] "For over a decade, we upheld the interpretation that the BIA announced in *Espinoza-Gonzalez*—requiring a nexus to an ongoing proceeding—as a plausible construction." *Valenzuela Gallardo I*, 818 F.3d at 824.

offense that involves (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding.

27 I. & N. Dec. 449, 460 (BIA 2018).

On October 18, 2019, on remand, the BIA dismissed Cordero-Garcia's appeal. *Matter of Cordero-Garcia*, 27 I. & N. Dec. 652, 663 (BIA 2019). The BIA "conclude[d] that dissuading a witness in violation of [CPC § 136.1(b)(1)] is categorically an aggravated felony offense relating to obstruction of justice under [§ 1101(a)(43)(S)] pursuant to the criteria that [the BIA] outlined in [*Matter of Valenzuela Gallardo*]." *Id.* at 654–55. The BIA also determined that it was appropriate to apply its modified definition from *Matter of Valenzuela Gallardo* retroactively and concluded that Cordero-Garcia was removable and ineligible for cancellation of removal. *Id.* at 663. On November 1, 2019, Cordero-Garcia timely petitioned for review.

On August 6, 2020, we decided *Valenzuela Gallardo v. Barr* ("*Valenzuela Gallardo II*"), "hold[ing] that the BIA's new construction is inconsistent with the unambiguous meaning of the term 'offense relating to obstruction of justice' in [§ 1101(a)(43)(S)] as enacted by Congress and, therefore, is an unreasonable construction of the statute." 968 F.3d 1053, 1056 (9th Cir. 2020). We held that "'obstruction of justice' under § 1101(a)(43)(S) unambiguously requires a nexus to ongoing or pending proceedings." *Id.* at 1069.

## II.

We have jurisdiction over Cordero-Garcia's petition for review pursuant to 8 U.S.C. § 1252(a)(2)(D). "We review constitutional and other questions of law de novo." *Bojnoordi v. Holder*, 757 F.3d 1075, 1077 (9th Cir. 2014) (internal quotation marks omitted). "Whether an offense is an aggravated felony for removal purposes is a question of law." *Chuen Piu Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011) (brackets omitted). "We do not defer to the BIA's interpretations of state law or provisions of the federal criminal code, and instead must review de novo whether the specific crime of conviction meets the INA's definition of an aggravated felony." *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860–61 (9th Cir. 2008) (internal citations and quotation marks omitted).

## III.

"Under the INA, any noncitizen who is convicted of an aggravated felony suffers several consequences, such as becoming deportable, inadmissible, and ineligible for cancellation of removal." *Cortes-Maldonado v. Barr*, 978 F.3d 643, 647 (9th Cir. 2020) (footnotes omitted). Under § 1101(a)(43)(S), an "aggravated felony" includes "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S).

"Courts employ the categorical approach to determine whether a state criminal conviction is an aggravated felony for the purposes of the INA." *Medina-Rodriguez v. Barr*, 979 F.3d 738, 744 (9th Cir. 2020). "The categorical approach prescribes a three-step process for determining whether an offense is an 'aggravated felony.'" *Ho Sang Yim*

*v. Barr*, 972 F.3d 1069, 1077 (9th Cir. 2020). "First, we must identify the elements of the generic federal offense." *Id.* "Second, we must identify the elements of the specific crime of conviction." *Id.* "Third, we compare the statute of conviction to the generic federal offense to determine whether the specific crime of conviction meets the . . . definition of an aggravated felony." *Id.* (internal quotation marks omitted). "Under the categorical approach, we ignore the actual facts of the particular prior conviction and instead compare the elements of the state statute of conviction to the federal generic crime to determine whether the conduct proscribed by the state statute is broader than the generic federal definition." *Cortes-Maldonado*, 978 F.3d at 647 (internal quotation marks omitted). "There is a categorical match only if the statute's elements are the same as, or narrower than, those of the generic offense." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) (citation and quotation marks omitted).

"A state offense qualifies as a generic offense—and therefore . . . an aggravated felony—only if the full range of conduct covered by the state statute falls within the meaning of the generic offense." *Id.* (brackets omitted). "[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). "It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* "There are two ways to show a realistic probability that a state statute exceeds the generic definition. First, there is not a categorical match if a state statute expressly defines a crime more broadly than the generic offense." *Lopez-Aguilar*, 948 F.3d at 1147 (internal quotation marks

omitted). When "a state statute explicitly defines a crime more broadly than the generic definition, no legal imagination is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime and a statute's overbreadth is evident from its text." *United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1152 (9th Cir. 2020) (citing *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018)) (internal quotation marks omitted). "Second, a petitioner can show that a state statute exceeds the generic definition if the petitioner can point to at least one case in which the state courts applied the statute in a situation that does not fit under the generic definition." *Lopez-Aguilar*, 948 F.3d at 1147 (internal quotation marks omitted); *Duenas-Alvarez*, 549 U.S. at 193 ("To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.").

IV.

Applying the categorical approach here,[2] we find that CPC § 136.1(b)(1) is not a categorical match to "an offense relating to obstruction of justice" under § 1101(a)(43)(S), because the California statute is missing the element of a nexus to an ongoing or pending proceeding or investigation.

---

[2] The parties do not argue that CPC § 136.1(b)(1) is divisible or that the modified categorical approach is applicable here. *See Lopez-Aguilar*, 948 F.3d at 1147 ("If the statute of conviction is broader than the generic offense, we next determine whether the statute is divisible or indivisible.").

Thus, it is not an "aggravated felony" for purposes of the INA.

We do not write on a clean slate. In *Valenzuela Gallardo II* we held that "the statute is unambiguous in requiring an ongoing or pending criminal proceeding, and the Board's most recent interpretation [in *Matter of Valenzuela Gallardo*] is at odds with that unambiguous meaning."[3]

---

[3] This holding was expressly reiterated at least four more times in *Valenzuela Gallardo II*:

> The precise question at issue in this case is whether an offense relating to obstruction of justice under § 1101(a)(43)(S) requires a nexus to an ongoing or pending proceeding or investigation. We conclude that Congress has clearly answered this question in the affirmative.

968 F.3d at 1062.

> Because § 1101(a)(43)(S) unambiguously does not extend to cover intentional interference with "reasonably foreseeable" proceedings or investigations, we conclude our analysis here and do not proceed to *Chevron* Step Two to determine whether the agency's interpretation is a reasonable choice within a gap left open by Congress.

*Id.* at 1068.

> We would reach the same conclusion even if we were not applying the *Chevron* framework: In 1996, when Congress enacted § 1101(a)(43)(S) into law, an offense relating to obstruction of justice unambiguously required a nexus to an ongoing or pending proceeding or investigation.

968 F.3d at 1062. In short, "an offense relating to obstruction of justice" under § 1101(a)(43)(S) requires the element of a nexus to an ongoing or pending proceeding or investigation.

Both parties agree that CPC § 136.1(b)(1) does not require a nexus to an ongoing or pending proceeding or investigation. We concur. In relevant part, the statute states:

> [E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

The text does not require a nexus to an ongoing or pending proceeding or investigation. Nor have California courts read such a requirement into the statute. *See People v. Cook*,

---

*Id.*

> Because "obstruction of justice" under § 1101(a)(43)(S) unambiguously requires a nexus to ongoing or pending proceedings, and California Penal Code § 32 does not, [petitioner's] state criminal conviction is not a categorical match with the aggravated felony offense charged in his Notice to Appear.

*Id.* at 1069.

59 Cal. App. 5th 586, 590 (2021) ("[T]o prove a violation of [CPC § 136.1(b)(1)], the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of their victimization to any peace officer or other designated officials.") (internal quotation marks omitted). Moreover, the California courts' decisions involving CPC § 136.1(b)(1) demonstrate that convictions under the statute do not require the existence of ongoing or pending proceedings or investigations. *See, e.g.*, *Cook*, 59 Cal. App. 5th at 588–89 (defendant attacked a family member at home, and while another family member was calling 911 to report the attack, defendant broke the phone); *People v. Galvez*, 195 Cal. App. 4th 1253, 1257–58 (2011) (while a witness to an assault outside of a restaurant was calling 911 on his cellphone, the defendant assaulted the witness causing the cell phone to fall to the ground); *People v. McElroy*, 126 Cal. App. 4th 874, 881 (2005) ("When [defendant's partner] dialed 911, she specifically told defendant she was calling the police. Defendant responded by taking the telephone away and hanging it up, thereby preventing her from contacting the police."). Indeed, California courts have characterized CPC § 136.1(b)(1) as designed to address conduct that occurs *prior to* the initiation of a proceeding or investigation. *See People v. Fernandez*, 106 Cal. App. 4th 943, 948–50 (2003) ("[CPC § 136.1(b)(1)] is not a catch-all provision designed to punish efforts to improperly influence a witness" but rather "punishes a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities. Under the current statutory scheme, such conduct is not the equivalent of an effort to prevent a witness from giving testimony after a criminal proceeding has been commenced.").

Because CPC § 136.1(b)(1)'s lack of the element of a nexus to an ongoing or pending proceeding or investigation is evident from its text and practical application, there is a realistic probability that the statute covers offenses that fall outside the definition of "an offense relating to obstruction of justice" under § 1101(a)(43)(S). CPC § 136.1(b)(1) is therefore not a categorical match to the generic definition of obstruction of justice. *See Valenzuela Gallardo II*, 968 F.3d at 1069 (finding that California's accessory to a felon offense, CPC § 32, "is not a categorical match with obstruction of justice under § 1101(a)(43)(S) because California's statute encompasses interference with proceedings or investigations that are not pending or ongoing").

## V.

In *Valenzuela Gallardo II*, we expressly took issue with the second prong of the BIA's definition of "an offense relating to obstruction of justice" under § 1101(a)(43)(S), specifically its language regarding "reasonably foreseeable" investigations or proceedings. *See* 968 F.3d at 1068 (holding that "§ 1101(a)(43)(S) unambiguously does not extend to cover intentional interference with reasonably foreseeable proceedings or investigations") (internal quotation marks omitted). The government now for the first time argues that *Valenzuela Gallardo II* left untouched the first prong of the BIA's definition—"offenses covered by chapter 73 of the Federal criminal code."[4]  Under the government's view, an offense "covered by chapter 73" qualifies as "an offense relating to obstruction of justice" under § 1101(a)(43)(S), with or without a nexus to an ongoing or pending proceeding

---

[4] The BIA did not find that CPC § 136.1(b)(1) was an "offense[] covered by chapter 73."

or investigation. The government then argues that CPC § 136.1(b)(1) is a categorical match to 18 U.S.C. § 1512—tampering with a witness, victim, or an informant—a Chapter 73 offense that does not require a nexus to an ongoing or pending proceeding or investigation. *See* 18 U.S.C. § 1512(f)(1) ("an official proceeding need not be pending or about to be instituted at the time of the offense").

The government's new position, however, is flatly inconsistent with *Valenzuela Gallardo II*, in which we stated:

> The precise question at issue in this case is whether an offense relating to obstruction of justice under § 1101(a)(43)(S) requires a nexus to an ongoing or pending proceeding or investigation. We conclude that Congress has clearly answered this question in the affirmative.

968 F.3d at 1062. We noted that § 1101(a)(43)(S) "does not expressly define 'an offense relating to obstruction of justice.'"[5] *Id.* at 1063; *see also Trung Thanh Hoang v. Holder*, 641 F.3d 1157, 1160 (9th Cir. 2011) ("Though the

---

[5] The term "aggravated felony" in § 1101(a)(43) encompasses twenty-one subsections identifying qualifying offenses. Fourteen of those subsections explicitly cross-reference other statutes to define the relevant qualifying offenses. *See* 8 U.S.C. § 1101(a)(43)(B), (C), (D), (E), (F), (H), (I), (J), (K), (L), (M), (N), (O), and (P). In contrast, § 1101(a)(43)(S) does not contain such a cross-reference to Chapter 73 of the federal criminal code for the term "obstruction of justice." *See Victoria-Faustino v. Sessions*, 865 F.3d 869, 874 (7th Cir. 2017) (as amended) ("Unlike other crimes enumerated as aggravated felonies, [§ 1101(a)(43)(S)] does not equate a crime relating to the obstruction of justice to a particular federal crime.").

United States criminal code includes a chapter entitled 'Obstruction of Justice,' 18 U.S.C. §§ 1501–1521, it does not clearly set forth the elements of a generic federal obstruction of justice crime; nor does § 1101(a)(43)(S) provide a generic definition.") (footnote omitted). And, we observed that the ordinary meaning of the term "obstruction of justice" indicated that "an offense relating to obstruction of justice" under § 1101(a)(43)(S) requires a nexus to an ongoing or pending proceeding or investigation. *Valenzuela Gallardo II*, 968 F.3d at 1063. Moreover, we noted that when the Antiterrorism and Effective Death Penalty Act of 1996 was enacted, "the contemporaneous understanding of 'obstruction of justice' required a nexus to an *extant* investigation or proceeding." *Id.* We also found that the relevant statutory context, specifically Chapter 73 of the federal criminal code, supported our holding. *Id.* at 1064. We explained that "[o]f the substantive provisions in Chapter 73 that existed when § 1101(a)(43)(S) was enacted, almost all of them required a nexus to an ongoing or pending proceeding or investigation." *Id.* "Therefore, the norm in Chapter 73 is that an offense relating to obstruction of justice requires a nexus to an ongoing or pending proceeding or investigation." *Id.* at 1065.

Indeed, we specifically discussed 18 U.S.C. § 1512, explaining that

> Congress's explicit instruction that § 1512 reach proceedings that are not pending at the time of commission of the act only underscores that the common understanding at the time § 1101(a)(43)(S) was enacted into law was that an obstruction offense referred only to offenses committed while proceedings were ongoing or pending. If that

were not the case, it would not have been necessary for Congress to make clear that § 1512 operates differently than the other provisions in Chapter 73. Thus, contrary to the BIA's conclusion, § 1512 is the exception that proves the rule: "an offense relating to obstruction of justice" requires a nexus to an ongoing or pending proceeding.

*Id.* at 1065–66.

We recognize that a circuit split has emerged regarding whether "an offense relating to obstruction of justice" under § 1101(a)(43)(S) unambiguously requires a nexus to an ongoing or pending proceeding or investigation. *Compare Valenzuela Gallardo II*, 968 F.3d at 1062 ("the statute is unambiguous in requiring an ongoing or pending criminal proceeding"), *with Pugin v. Garland*, 19 F.4th 437, 449 (4th Cir. 2021) ("Considering federal and state laws, the Model Penal Code, and dictionary definitions, it is at least ambiguous as to whether the phrase 'relating to obstruction of justice' requires the obstruction of an ongoing proceeding."), *and Silva v. Garland*, 27 F.4th 95, 108 (1st Cir. 2022) ("That the vast majority of jurisdictions with obstruction of justice offenses did not limit that concept to only offenses with a nexus to a pending or ongoing investigation or judicial proceeding further confirms our reading of the generic federal definition."). In our Circuit, however, *Valenzuela Gallardo II* is controlling precedent that we are bound to apply. *See United States v. Shelby*, 939 F.3d 975, 978 (9th Cir. 2019). And *Valenzuela Gallardo II* mandates the conclusion that 18 U.S.C. § 1512 cannot serve as the generic obstruction of justice definition because it does not contain the required element of a nexus to an ongoing or pending proceeding or investigation.

Accordingly, it is not an appropriate comparator to CPC § 136.1(b)(1) for purposes of a categorical approach analysis.

## VI.

The government's argument—that because "offenses covered by chapter 73 of the Federal criminal code" are "offense[s] related to the obstruction of justice" under § 1101(a)(43)(S), CPC § 136.1(b)(1) qualifies as a categorical match to a chapter 73 offense—also fails. The government concedes that the BIA did not analyze whether Cordero-Garcia's CPC § 136.1(b)(1) conviction was a categorical match with 18 U.S.C. § 1512, the federal analogue identified by the government, so we cannot deny the petition on these grounds. *See Santiago-Rodriguez v. Holder*, 657 F.3d 820, 829 (9th Cir. 2011) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency.") (quotation marks and citation omitted); *see also Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16–17 (2002) ("If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."). In any event, CPC § 136.1(b)(1) is not a categorical match with 18 U.S.C. § 1512.

The elements of § 136.1(b)(1) are "(1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials." *People v. Upsher*, 155 Cal. App. 4th 1311, 1320 (2007). "[S]ection 136.1 is a specific intent crime." *People v. Navarro*, 212 Cal. App. 4th 1336, 1347 (2013).

In comparison, the elements of 18 U.S.C. § 1512(b)(3) are that the defendant (1) "knowingly uses intimidation, threatens, or corruptly persuades another person or attempts to do so, or engages in misleading conduct toward another person"; (2) "with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States"; (3) "of information relating to the commission or possible commission of a Federal offense." *Id.*

CPC § 136.1(b)(1) is broader than 18 U.S.C. § 1512(b)(3) because the former lacks the requirement that an individual "uses intimidation, threatens, or corruptly persuades another person," or "engages in misleading conduct toward another person." While CPC § 136.1(a) and (c) expressly require proof of malice, CPC § 136.1(b)(1) does not.[6] *See Cook*, 59 Cal App. 5th at 590 ("[CPC § 136.1(b)(1)] does not require that the defendant act knowingly and maliciously.") (internal quotation marks omitted). The California Court of Appeal has explained the omission of a malice requirement from CPC § 136.1(b)(1) as follows:

> The Legislature could have reasonably concluded that a person who prevents or attempts to prevent a victim or witness from *attending or testifying at a trial or other proceeding* commits a crime only if the

---

[6] CPC § 136.1(a) punishes any person who, "knowingly and maliciously prevents or dissuades" or "attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Cal. Penal Code §§ 136.1(a)(1)–(2). CPC § 136.1(c) punishes "[e]very person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under [certain aggravating circumstances]." *Id.* §§ 136.1(c)(1)–(4).

person did so with malice. For instance, the Legislature may have been concerned about potentially criminalizing the conduct of an employer who intentionally prevented an employee from testifying at a proceeding if the employer was motivated by the desire to keep the employee at work rather than by a malicious desire to thwart the administration of justice or to vex or annoy the employee. As a result, the Legislature may have wished to limit section 136.1, subdivision (a) offenses to those involving malice. No such concern arises with regard to a section 136.1, subdivision (b) offense since, even without a malice element, a subdivision (b) offense requires the perpetrator to intend to prevent a crime from even being reported by a victim or witness. The Legislature could have reasonably concluded that the limited scope of subdivision (b) did not need to be further narrowed by a malice requirement, particularly in light of the importance of encouraging reports to law enforcement.

. . . Furthermore, the Legislature could have reasonably concluded that it would be reasonable for a family member to try to protect a victim or witness from the trauma of attending a proceeding, but unreasonable for a family member to try to prevent a victim or witness from reporting a crime.

*People v. Brackins*, 37 Cal. App. 5th 56, 67 (2019).

Likewise, with respect to the scope of conduct covered by the malice requirements in CPC § 136.1(a) and (c), the California Court of Appeal has explained:

> [T]he model statute, on which California's statute was based, was designed to apply to persons who attempt to dissuade witnesses from testifying, other than persons such as family members and individuals who make offhand comments about not becoming involved. The statute provided that the prosecution could show malice in either of two ways: proving the traditional meaning of malice (to vex, annoy, harm, or injure) or proving the meaning of malice that is unique to the statute (to thwart or interfere in any manner with the orderly administration of justice). By including the latter definition of malice, the [California] Legislature envisioned a relatively broad application of the term. The Assembly Committee on Criminal Justice bill analysis noted: "This new misdemeanor may make criminal attempts to settle misdemeanor violations, certain traffic accidents, etc., among the parties without reporting them to the police. Likewise, a person arrested by a civilian (i.e., a shopkeeper) may face criminal charges by trying to talk the shopkeeper into not calling the police."

*People v. Wahidi*, 222 Cal. App. 4th 802, 809 (2013) (footnote omitted).

Because CPC § 136.1(b)(1) only requires the defendant specifically intend to "prevent or dissuade a person" from reporting a crime, without any requirement of malice, it is broader than 18 U.S.C. § 1512(b)(3), which requires use of intimidation, threats, misleading conduct, or corrupt persuasion. "Corrupt persuasion" is distinct from "innocent persuasion." *See United States v. Doss*, 630 F.3d 1181, 1190 (9th Cir. 2011) (as amended) (explaining that "[the defendant's conduct], without more, was insufficient to establish 'corrupt' as opposed to innocent persuasion"); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) ("'Corrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil."); *United States v. Farrell*, 126 F.3d 484, 489 (3d Cir. 1997) ("We read the inclusion of 'corruptly' in § 1512(b) as necessarily implying that an individual can 'persuade' another not to disclose information to a law enforcement official with the intent of hindering an investigation without violating the statute, i.e., without doing so 'corruptly.'"); *United States v. Weiss*, 630 F.3d 1263, 1273 (10th Cir. 2010) ("The 'corruptly persuades' element of the witness tampering statute requires the government to prove a defendant's action was done voluntarily and intentionally to bring about false or misleading testimony or to prevent testimony with the hope or expectation of some benefit to the defendant or another person.") (internal quotation marks omitted); *United States v. Edlind*, 887 F.3d 166, 173 (4th Cir. 2018) ("To convict [the defendant] under § 1512, the Government had to prove not only that she used persuasion toward [another person], but that the persuasion was corrupt, because the word 'corruptly' is what serves to separate criminal and innocent acts of influence.") (internal quotation marks omitted).

Because CPC § 136.1(b)(1)'s overbreadth is evident from its text, we need not identify a case in which the state courts did in fact apply the statute in a non-generic manner. *See United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022) (explaining that "in *Duenas-Alvarez* the elements of the relevant state and federal offenses clearly overlapped," and finding it unnecessary to determine whether state courts applied a statute in a special nongeneric manner where "there [was] no overlap to begin with"); *Lopez-Aguilar*, 948 F.3d at 1147. Nonetheless, California caselaw demonstrates a realistic probability that CPC § 136.1(b)(1) would be applied to conduct that falls outside the definition of 18 U.S.C. § 1512(b)(3). In *People v. Wahidi*, the defendant was convicted under CPC § 136.1(a)—dissuading a witness from giving testimony with malice. 222 Cal. App. 4th at 805. The defendant was involved in a physical altercation with other individuals in a parking lot, during which the defendant punched one of the individuals and broke another individual's car windows with a baseball bat. *Id.* at 804. The day before the preliminary hearing related to the altercation, the defendant approached one of the individuals at his mosque, apologized, and said: "We're both Muslims. That if we could just settle this outside the court in a more Muslim manner family to family, have our families meet and settle this out of court and not take this to court." *Id.* at 804–05 (brackets omitted). "[The individual] understood [the defendant] wanted the case to be resolved informally and did not want [the individual] to testify at the preliminary hearing. [The individual] responded sympathetically to [the defendant] and accepted his apology." *Id.* at 805. "[The defendant] never demanded that [the individual] refrain from testifying or threatened [the individual] with harm if he were to come to court." *Id.* "The [trial] court . . . found [the defendant] had attempted to dissuade [the individual] from testifying, but not by using force or threat of force, and

declared the offense a misdemeanor." *Id.* The California Court of Appeal affirmed the trial court's judgment, explaining that:

> Section 136 defines "malice" for purposes of section 136.1: "'Malice' means an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." There is no substantial evidence that [the defendant] intended to "vex, annoy, harm, or injure" [the individual] when [the defendant] approached [the individual] in the mosque. But the evidence does show that [the defendant] intended to "thwart or interfere in any manner with the orderly administration of justice" by convincing [the individual] not to testify at the preliminary hearing the next day. Under the definition of malice in section 136, [the defendant] maliciously attempted to dissuade [the individual] from testifying.

*Id.* at 807. Plainly, the defendant's "malicious" conduct in *Wahidi* was not the kind of intimidation, threat, corrupt persuasion, or misleading conduct that would give rise to liability under 18 U.S.C. § 1512(b). And because CPC § 136.1(b) *lacks* a malice requirement and is broader than CPC § 136.1(a), *Wahidi* demonstrates that California would apply CPC § 136.1(b) to conduct outside the definition of U.S.C. § 1512(b).[7]

---

[7] Because we conclude that CPC § 136.1(b)(1) is not a categorical match to "an offense relating to obstruction of justice" under

## VII.

For the reasons above, we hold that Cordero-Garcia's conviction under CPC § 136.1(b)(1) is not "an offense relating to obstruction of justice" under 8 U.S.C. § 1101(a)(43)(S), and that he is not removable on that basis. We grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED** and **REMANDED**.

---

VANDYKE, Circuit Judge, dissenting.

I haven't been shy in my criticism of our court's "abysmal and indefensible immigration precedents,"[1] and this case well illustrates why. The majority emphasizes that in reaching its result, "[w]e do not write on a clean slate." Quite true. Since 2011, our court has been whipsawing the Board of Immigration Appeals ("BIA"), doing everything in our power (and much not) to upset the BIA's consistent and reasonable interpretation of what constitutes "an offense related to obstruction of justice." To understand just how dirty our court has played to prevent the deportation of immigrants who have willingly interfered with our justice

---

§ 1101(a)(43)(S), we do not proceed with a *Montgomery Ward & Co. v. F.T.C.*, 691 F.2d 1322 (9th Cir. 1982) retroactivity analysis.

[1] *Reyes v. Garland*, 11 F.4th 985, 998 (9th Cir. 2021) (VanDyke, J., dissenting); *see also Molina v. Garland*, 37 F.4th 626, 641 (9th Cir. 2022) (VanDyke, J., dissenting); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 696 (9th Cir. 2021) (VanDyke, J., dissenting); *Sanchez Rosales v. Barr*, 980 F.3d 716, 721–23 (9th Cir. 2020) (VanDyke, J., concurring dubitante).

system requires another depressing walk down memory lane, where successive panels of our court—often over a dissent—have misrepresented the BIA, misrepresented the law, and even completely reversed key positions taken in our own decisions issued only a few years earlier. All for only one discernable reason: to entrench an indefensible legal conclusion that was clearly wrong when first made over a decade ago and, despite our wrongheaded efforts to defend it at every turn, has made us an embarrassing outlier with our sister circuits.

While I appreciate, as the majority does, that we are bound by precedent, that does not mean that we are bound to perpetuate the irrationality of our immigration jurisprudence by projecting it headlong into the future. I must regrettably dissent.

\* \* \*

One more thing before we start our journey. I have been critical of what I see as results-oriented judging by our court, particularly (although not exclusively) in immigration cases. I want to be clear: generally, it is not the result in any individual case that has led me to that conclusion. Only God knows whether erroneous judging in any individual case is a result of bad motives, mere human foibles, or something else (or a combination, I suppose). And that is no doubt true of *this* case.

But there is also the jurisprudential equivalent of the law of large numbers. While any single erroneous decision can usually be explained as a mere well-intentioned mistake, the ongoing and indefensible jurisprudential trainwreck that is our court's immigration jurisprudence writ large—which I've chronicled not only below, but also sadly in a now long list of decisions—doesn't just happen by accident. To

paraphrase the Bard, something is rotten in our court's immigration jurisprudence, and it's not by chance.

My colleagues in the majority should be embarrassed. Perhaps not for their wrong decision today—to err is human, after all, even for those in robes. But they should be troubled by our court's jaw-dropping, always-increasing, epic collection of immigration gaffes. The fact that they are not, but rather charge on heedlessly in this case, is itself perhaps a clue as to why the trainwreck continues.

## I. DISCUSSION

### A. Factual Background

Before I recount the history of how we got to this point in our jurisprudence, it is important to know the facts of this case. Not because the facts are relevant to application of the "categorical approach"—they aren't, a point that my colleague felt compelled to reiterate during oral argument, explaining that facts are "nice" but "we don't care what the facts of [Cordero-Garcia's] crime were . . . ." But the facts of this case are important nonetheless because they show how far we've strayed from Congress's purpose in defining deportable crimes. *See* H.R. Rep. No. 104-22, at 6–7 (1995) (explaining Congress's purpose in defining "aggravated felony" was to "strengthen the government's ability to efficiently deport aliens who are convicted of serious crimes" to address the fact that "many aliens who commit[] serious crimes [a]re released into American society after they [a]re released from incarceration, where they then continue to pose a threat to those around them"). The majority largely ignores the facts, and you can't blame them. The Department of Justice attorney arguing this case described Cordero-Garcia's crimes as "some of the most horrendous . . . in all of [her] time in the government." It's

difficult to hear the depravity in detail, but easy to see why Congress acted to prevent criminal aliens like Cordero-Garcia from being released back into American society.

\*     \*     \*

Cordero-Garcia, a native and citizen of Mexico, worked as a staff psychologist for the County of Santa Barbara Alcohol, Drug and Mental Health Service Department since 1990. Following a report of sexual abuse by a female patient, police began investigating him in September 2007. As a result of this investigation, Cordero-Garcia "was arrested for rape by threat of use of public authority" and released on bail in November 2007. Prosecutors alleged that for years Cordero-Garcia abused his position by sexually assaulting, raping, and sodomizing his patients. While Cordero-Garcia denied the accusations against him, he admitted to having continuous, repeated sexual relationships with his patients. Cordero-Garcia was ultimately convicted of: (1) sexual battery without restraint under California Penal Code ("CPC") § 243.4(e)(1); (2) sexual exploitation by a psychotherapist under CPC § 729(a); and (3) two counts of dissuading a victim or witness from reporting a crime under CPC § 136.1(b)(1).

The first of Cordero-Garcia's patients to come forward recalled being "sexually abused . . . for more than three years." She claimed that Cordero-Garcia repeatedly raped and sodomized her, threatening her with time "in jail or a mental hospital" if she refused. She later recounted for authorities that Cordero-Garcia filmed the assaults and would sometimes use a "dildo" to penetrate her vaginally and anally. While executing a search warrant, police officers found video of Cordero-Garcia having sex with the patient and also located a "dildo" with "mixed DNA on it" matching that of Cordero-Garcia and the patient.

Numerous other patients explained how Cordero-Garcia victimized them, including one he was supposed to be treating for "depression and suicidal tendencies." She described that Cordero-Garcia would hug and kiss her and touch her breasts during therapy sessions. Another patient said Cordero-Garcia threatened to take her children away, warning that "he could do anything and get away with it because judges respected him." She described that over the course of numerous sessions, he "fondled and photographed her breasts, exposed his erect penis," forced his hand down her pants and digitally penetrated her, and finally, "shoved [her] face down on a desk and raped her."

Another patient said Cordero-Garcia threatened to put her schizophrenic brother "in a mental hospital where he would be tied down and not fed," so she "submitted" to oral, vaginal, and anal sex with Cordero-Garcia. The patient recalled being "victimized . . . for years" as Cordero-Garcia "raped her mind and body." She described Cordero-Garcia as a "monster" and explained that "he would touch his penis during most of their sessions and masturbate . . . while she was forced to watch. He would always talk about 'how hard' he was and reminded her of the power he had over her." While released on bail, Cordero-Garcia "begged" this woman "not to testify against him." He confessed to her that the accusations against him "were true," admitting that there were even "more girls."

Ultimately, seven women, six of whom were patients of Cordero-Garcia, came forward. In a civil suit against Cordero-Garcia and the County of Santa Barbara, these women accused Cordero-Garcia of being "a sexual predator" and "intentionally seeking out socio-economic disadvantaged female mental health patients whom he could systematically re-victimize." The county agreed to

confidential monetary settlements with each of the women "as a result of the serious mental and physical harm" inflicted on them by Cordero-Garcia.

Given the facts in cases like this, one might wonder why our court has worked so hard to prevent the deportation of individuals like Cordero-Garcia, even to the point, as the majority acknowledges, of creating a lopsided circuit-split. Of course, much of the damage that I recount below is now our court's binding precedent, which can be fixed only by our court en banc or the Supreme Court. But precedent does not mandate today's result. If it did, there would be no need for the majority to publish its lengthy decision. Instead, the majority today drives the train even farther off the tracks. It did not need to do so. And to understand why it should have tried to avoid doing so, we start at the beginning.

## B.  Legal Background

Our tale starts on a less depressing note, with *In re Batista-Hernandez*, 21 I. & N. Dec. 955 (BIA 1997). The respondent Juan Batista-Hernandez was convicted of being an accessory after the fact in violation of 18 U.S.C. § 3. *Id.* at 956.[2]  Following his conviction, the Immigration and Naturalization Service ("INS") charged that he was deportable for committing "an offense relating to obstruction of justice" under 8 U.S.C. § 1101(a)(43)(S). *Id.* at 961; *see also* 8 U.S.C. §§ 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 1101(a)(43)(S) (defining

---

[2] Section 3 provided that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3.

"aggravated felony" to include "an offense relating to obstruction of justice . . . for which the term of imprisonment is at least one year"). An en banc panel of the BIA considered whether Batista-Hernandez's accessory after the fact conviction was an "obstruction of justice" under the statute. *Batista-Hernandez*, 21 I. & N. Dec. at 961. The BIA concluded that it "clearly" was. *Id.* Specifically, "the wording of . . . § 3 itself indicates its relation to obstruction of justice, for the statute criminalizes actions knowingly taken to 'hinder or prevent (another's) apprehension, trial or punishment.'" *Id.*

Two years later, in *In Re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999), the BIA again addressed the definition of "obstruction of justice." This time, the respondent Rafael Espinoza-Gonzalez was convicted of misprision of a felony in violation of 18 U.S.C. § 4. *Id.* at 890.[3] The BIA explained that "[t]he United States Code does not define the term 'obstruction of justice' or 'obstructing justice.' Instead, [C]hapter 73 of title 18[, specifically, 18 U.S.C. §§ 1501–1518,] lists a series of offenses collectively entitled 'Obstruction of Justice.'" *Id.* at 891. And "the obstruction of justice offenses listed in [Chapter 73] have as an element interference with the proceedings of a tribunal or require an intent to harm or retaliate against others who cooperate in the process of justice or might otherwise so cooperate." *Id.* at 892. "[A]nd although misprision of a felony bears some resemblance to these offenses, it lacks *the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice*." *Id.*

---

[3] Section 4 provided that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same . . . , shall be fined . . . or imprisoned . . . , or both." 18 U.S.C. § 4.

at 894 (emphasis added). Thus, the BIA concluded that Espinoza-Gonzalez's misprision of a felony conviction was not an "obstruction of justice." *Id.* at 897.

In distinguishing *Batista-Hernandez*, the BIA explained that unlike the crime of accessory after the fact, which "requires an affirmative action knowingly undertaken 'in order to hinder or prevent (another's) apprehension, trial or punishment,'" *id.* at 894 (quoting 18 U.S.C. § 3), the crime of misprision of a felony does not require a "specific purpose for which the concealment must be undertaken," *id.* In other words, "[t]he *specific purpose of hindering the process of justice* brings the federal 'accessory after the fact' crime within the general ambit of offenses that fall under the 'obstruction of justice' designation." *Id.* at 894–95 (emphasis added). But *nowhere* did the BIA suggest—explicitly or implicitly—that "an ongoing proceeding or investigation" was a requirement.

Nearly a decade later in *Renteria-Morales v. Mukasey*, 551 F.3d 1076 (9th Cir. 2008), our court considered "whether a conviction for failure to appear in court in violation of 18 U.S.C. § 3146 meets the definition of an aggravated felony in . . . § 1101(a)(43)(S)." *Id.* at 1079.[4] Because "§ 1101(a)(43)(S) does not clearly set forth the elements of the generic federal crime," we looked to *Espinoza-Gonzalez* as "binding agency precedent . . . interpret[ing] the elements of a generic obstruction-of-

---

[4] Section 3146 provided that "[w]hoever, having been released under this chapter knowingly (1) fails to appear before a court as required by the conditions of release; or (2) fails to surrender for service of sentence pursuant to a court order; shall be punished . . . ." 18 U.S.C. § 3146.

justice offense under § 1101(a)(43)(S)." *Id.* at 1086 (cleaned up). We observed that, in *Espinoza-Gonzalez*,

> the BIA articulated both an actus reus and mens rea element of the generic definition of such crimes for purposes of § 1101(a)(43)(S). First, the BIA held that obstruction of justice crimes include "either active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice." Second, the BIA held that such crimes include an intent element, defined as a "specific intent to interfere with the process of justice."

*Id.* (cleaned up) (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 892–93). We determined that the BIA had "acted reasonably in deriving the definition of 'obstruction of justice' for purposes of § 1101(a)(43)(S) from the body of federal statutes imposing criminal penalties on obstruction-of-justice offenses." *Id.* We concluded that § 3146 "clearly includes the requisite actus reus . . . [and] mens rea," *id.* at 1087, and thus, "a conviction under § 3146 is categorically 'an offense relating to obstruction of justice' under § 1101(a)(43)(S)," *id.* at 1089.

The following year, in *In re Trung Thanh Hoang* ("*Hoang I*"), No. A074 465 074, 2009 WL 2981785 (BIA Aug. 31, 2009), the BIA considered whether a Washington state conviction "for the offense of rendering criminal assistance . . . qualified as an aggravated felony pursuant to

[§ 1101(a)(43)(S)]." *Id.* at *1.**[5]** The respondent Trung Thanh Hoang argued that *Batista-Hernandez* had been overruled by *Espinoza-Gonzalez* "and that his offense [did] not . . . correspond to the definition provided in *Espinoza-Gonzalez*." *Id.* The BIA disagreed. In *Espinoza-Gonzalez*, the BIA had "concluded . . . that obstruction-of-justice crimes include (1) 'either active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice,' and (2) an intent element defined as a 'specific intent to interfere with the process of justice.'" *Id.* at *2 (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893).**[6]** *Espinoza-Gonzalez*, the BIA explained, "*reaffirmed rather than overruled* our holding in . . . *Batista-Hernandez*, . . . that a conviction . . . for being an accessory after the fact constitutes an obstruction-of-justice offense." *Id.* (emphasis added) (citing *Espinoza-Gonzalez*, 22 I. & N. Dec. at 894–95). The BIA determined that the elements of the federal crime of accessory after the fact were "*substantially the same*" as those for the state crime of rendering criminal assistance. *Id.* (emphasis added). As a result, the BIA concluded that the respondent's conviction of rendering criminal assistance was "an obstruction-of-justice" because

---

**[5]** The relevant Washington state statute provided that a "person is guilty of rendering criminal assistance in the second degree if he or she renders criminal assistance to a person who has committed or is being sought for a class B or class C felony or an equivalent juvenile offense or to someone being sought for violation of parole, probation, or community supervision." Wash. Rev. Code § 9A.76.080(1).

**[6]** Notably, the BIA cited *Renteria-Morales*, agreeing with our court's summary therein of the BIA's "articulation of both an actus reus and mens rea element of the generic definition of obstruction-of-justice crimes." *Hoang I*, 2009 WL 2981785, at *2 (citing *Renteria-Morales*, 551 F.3d at 1086).

it, like the federal crime of accessory after the fact, "require[d] that the defendant (1) have knowledge that the principal has committed an offense; and (2) take actions to assist the principal with the intent that the principal avoid arrest, trial, or punishment." *Id.*

Hoang petitioned our court for review of the BIA's decision in his case. And that's when the train first jumped the tracks.

In *Trung Thanh Hoang v. Holder* ("*Hoang II*"), 641 F.3d 1157 (9th Cir. 2011), our court considered, as the BIA had below, whether a state "conviction for rendering criminal assistance is a crime related to obstruction of justice." *Id.* at 1158. The panel majority noted, as we had in *Renteria-Morales*, that Chapter 73 "does not clearly set forth the elements of a generic federal obstruction of justice crime; nor does § 1101(a)(43)(S) provide a generic definition." *Id.* at 1160 (citing *Renteria-Morales*, 551 F.3d at 1086). "Consequently," the majority explained, "we must determine whether [the BIA] has defined the term. We defer to the BIA's reasonable interpretations of ambiguous terms." *Id.* (citing *Renteria-Morales*, 551 F.3d at 1086). This proved to be lip service.

While the majority acknowledged that *Espinoza-Gonzalez* "did not overrule *Batista-Hernandez*," it refused to "defer to *Batista-Hernandez*." *Id.* at 1164. Per the majority, *Batista-Hernandez* "merely conclude[d] that [the crime of accessory after the fact] is obstruction of justice without defining the ambiguous term, identifying the elements of the statute of conviction, or applying a definition of obstruction of justice to the statute." *Id.* Thus, although *Batista-Hernandez* was *clearly* more factually relevant—concerning a crime the BIA viewed to be "substantially the same," *Hoang I*, 2009 WL 2981785, at *2—the majority looked

instead to *Espinoza-Gonzalez* "to supply the definition of the generic federal obstruction of justice offense," *Hoang II*, 641 F.3d at 1161. The majority's motivation for doing so quickly became apparent.

While purporting to defer to the BIA's "reasonable interpretation" of "obstruction of justice," the majority cherry-picked portions of the *Espinoza-Gonzalez* decision without context to conclude that "[t]he language used [in *Espinoza-Gonzalez*] indicates that the BIA now concludes that accessory after the fact is an obstruction of justice crime *when it interferes with an ongoing proceeding or investigation*." *Id.* at 1164 (emphasis added). But the BIA never made any such conclusion. Nevertheless, with this definition securely divined, the majority determined that a "conviction for a misdemeanor by rendering criminal assistance . . . lacks the necessary actus reus and is not categorically obstruction of justice according to the definition provided in *Espinoza-Gonzalez*." *Id.* at 1165. Our court accordingly granted Hoang's petition for review. *Id.*

Judge Bybee dissented. As he correctly pointed out, the majority's claim that the BIA had not defined the ambiguous term "obstruction of justice" in *Batista-Hernandez* was flatly inconsistent with our court's earlier decision in *Renteria-Morales*. There, our court "[i]n no uncertain terms, . . . held that 'in determining whether [a] specific crime of conviction is an obstruction-of-justice . . . , we rely on the BIA's definition.'" *Id.* at 1166 (Bybee, J., dissenting) (quoting *Renteria-Morales*, 551 F.3d at 1086–87). "Here, the BIA has indeed crafted such a definition, and it contradicts the one asserted by the majority." *Id.* As Judge Bybee explained, *Batista-Hernandez* "cannot be ignored" despite the majority's obvious preference to do so. *Id.* at 1167. And although the majority claimed to defer to the BIA's

definition in *Espinoza-Gonzalez*, it "remarkably, applie[d] its own interpretation of the standard articulated *by the BIA* in *Espinoza-Gonzalez*." *Id.* "The weakness in the majority's position," Judge Bybee observed, is "highlighted by its acknowledgment that 'the BIA was correct that *Espinoza-Gonzalez . . .* did not overrule *Batista-Hernandez*.' Nonetheless, it maintains that 'the BIA now concludes that accessory after the fact is an obstruction of justice crime when it interferes with an ongoing proceeding or investigation.'" *Id.* In short, "not only has the majority conceded that *Espinoza-Gonzalez* did not overrule *Batista-Hernandez*, but it has also fashioned a definition that, *to its own satisfaction*, fuses the two together." *Id.* at 1168 (emphasis added).

*Hoang II*, as badly decided as it was, is just the opening chapter in our sad story. As our court has repeatedly (if begrudgingly) recognized, it is the BIA—not our court—that has the final word in how ambiguous provisions in the immigration statutes are interpreted. *Id.* at 1160 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). And since the majority in *Hoang II* acknowledged that "a crime relating to obstruction of justice" is ambiguous, there was hope that the BIA might fix our bungled mess.

Which the BIA quickly attempted. Following our decision in *Hoang II¸* the BIA sua sponte reopened removal proceedings in a different case: *In re Valenzuela Gallardo* ("*Valenzuela Gallardo I*"), 25 I. & N. Dec. 838 (BIA 2012). It did so expressly to address whether the respondent Agustin Valenzuela Gallardo's "felony accessory offense qualifies as 'an offense relating to obstruction of justice,'"

*id.* at 839,[7] and "to clarify [its] prior precedents" since our court seemed to be having trouble comprehending them, *id.* at 840. Discussing *Batista-Hernandez* and *Espinoza-Gonzalez*, the BIA reiterated that the "critical element"— "the affirmative and intentional attempt, with specific intent, to interfere with the process of justice—*demarcates the category of crimes constituting obstruction of justice.*" *Id.* at 841 (emphasis added). And "[w]hile many crimes fitting this definition will involve interference with an ongoing criminal investigation or trial, we now clarify that *the existence of such proceedings is not an essential element* of 'an offense relating to obstruction of justice.'" *Id.* (emphasis added). Applying this definition to Valenzuela Gallardo's conviction, the BIA concluded that the state crime of felony accessory "is properly classified as an offense 'relating to obstruction of justice.'" *Id.* As the BIA explained, the elements of felony accessory are "closely analogous, if not functionally identical, to those [of the crime of accessory after the fact at issue in *Batista-Hernandez*]. Critically, both [crimes] include the element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice." *Id.*

No doubt recognizing that our court is sometimes oddly obtuse when it comes to reading the BIA's decisions, the BIA directly addressed our holding in *Hoang II*, explaining that the BIA had never held "that obstruction offenses must

---

[7] Valenzuela Gallardo was convicted of the crime of accessory to a felony under CPC § 32, which provided that "[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." Cal. Penal Code. § 32.

involve interference with an ongoing investigation or proceeding. Rather, the standard we set forth was that an obstruction offense must include 'the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice.'" *Id.* at 842 (quoting *Espinoza-Gonzalez*, 22 I & N Dec. at 894). And again, "[i]nterference with the 'process of justice' does not require the existence of an ongoing investigation or proceeding." *Id.* As the BIA explained, Chapter 73 defines criminal offenses "as within the category of offenses described as 'Obstruction of Justice' [that] clearly involve conduct that significantly precedes the onset of any official proceeding, even of an investigative nature." *Id.* at 842–43. The BIA therefore concluded Valenzuela Gallardo was removable as charged. *Id.* at 844.

Given the clarity with which the BIA rebuffed our holding in *Hoang II*, our court would need to get creative on appeal to achieve its preferred result. We didn't disappoint. First, we erroneously read *Valenzuela Gallardo I* as establishing a "new" definition of "obstruction of justice" that was inconsistent with the BIA's "prior construction" because its "new" definition "require[d] no nexus to an ongoing investigation or proceeding." *Valenzuela Gallardo v. Lynch* ("*Valenzuela Gallardo II*"), 818 F.3d 808, 811 (9th Cir. 2016). But the BIA had *never* required any such nexus. Rather, it was our court in *Hoang II* that introduced this requirement. 641 F.3d at 1164. Judge Seabright, sitting by designation, vehemently dissented, making this exact point. *See Valenzuela Gallardo II*, 818 F.3d at 825 (Seabright, J., dissenting) (explaining that *Valenzuela Gallardo I* "did not announce a new . . . interpretation that removed a required nexus between an obstructive act and an existing proceeding"). As he observed,

the majority . . . relies on a mistaken premise that [*Espinoza-Gonzalez*] previously required a nexus to an ongoing investigation or proceeding for a crime of conviction to be "an offense relating to obstruction of justice" for purposes of . . . § 1101(a)(43)(S). In fact, *Espinoza-Gonzalez* did not (and [*Valenzuela Gallardo I*] explains why). [*Valenzuela Gallardo I*] is not a change from BIA precedent—it is a change from *this Circuit's interpretation of BIA precedent*.

*Id.* (emphasis added); *see also id.* at 829 ("*Espinoza-Gonzalez* never required a crime of conviction to have as an element only 'active interference with proceedings of a tribunal;' it always required 'either active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice.'" (quoting *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893)).

The majority downplayed Judge Seabright's concern, suggesting that it didn't matter whether it characterized the BIA's definition as "new, newly clarified, or merely 'a change from this Circuit's interpretation of BIA precedent.'" *Id.* at 814 n.2. But the majority's treatment of the BIA's definition as "new" went well beyond mere unnecessary "characterization." *Id.* In fact, it controlled its analysis. The majority acknowledged that our court had previously "deferred to the BIA's interpretation of 'obstruction of justice' in at least three cases," but was able to elide the obvious inconsistent treatment only by pretending the BIA's earlier definition was consistent with the one first announced by our court in *Hoang II*, and thus "was reasonable" and merited our prior deference. *Id.* at 815. But according to the

majority, the BIA's supposedly "new" definition "raise[d] grave constitutional concerns." *Id.* at 818. Framing the BIA's definition as "new" thus allowed the majority to attack the BIA's definition unshackled by the weight of our court's own precedent.

Continuing, the majority explained that because the BIA's "new" definition didn't give "an indication of what it does include in 'the process of justice,' or where that process begins and ends," it was "unconstitutionally vague." *Id.* at 819; *see also id.* at 818–22. Specifically, "[t]he BIA's new construction leaves grave uncertainty about the plethora of steps before and after an 'ongoing criminal investigation or trial' that comprise 'the process of justice,' and, hence, uncertainty about which crimes constitute 'obstruction of justice.'" *Id.* at 820; *see also id.* at 822. The majority thus remanded the case to the BIA, so that it could "either offer a new construction of [obstruction of justice] or, in the alternative, apply *Espinoza-Gonzalez*'s interpretation to the instant case." *Id.* at 824. In doing so, the majority all but invited the BIA to modify its definition of "an offense relating to obstruction of justice" to require at least a nexus "to 'a foreseeable or contemplated proceeding.'" *Id.* at 822 n.7 (noting that if "the BIA intends interference with the 'process of justice' to mean interference with an ongoing *or foreseeable or contemplated* investigation or proceeding, it can clarify this on remand").

On remand, the BIA tried—yet again—"to clarify [its] prior precedents regarding the contours of the generic definition of an aggravated felony offense relating to obstruction of justice." *In re Valenzuela Gallardo* ("*Valenzuela Gallardo III*"), 27 I. & N. Dec. 449, 451 (BIA 2018). The BIA first observed that "[t]he Ninth Circuit has recognized that the language of [§ 1101(a)(43)(S)] is

ambiguous because it does not clearly answer whether an offense relating to obstruction of justice must involve interference in an ongoing investigation or proceeding." *Id.* at 452. After analyzing the crimes proscribed under Chapter 73, the BIA "conclude[d] that Congress did not intend interference in an ongoing or pending investigation or proceeding to be a necessary element of an 'offense relating to obstruction of justice.'" *Id.* at 456. Nor did Congress intend "to limit the phrase 'obstruction of justice' to the crimes listed in [C]hapter 73." *Id.* at 460. Thus, "an offense relating to obstruction of justice" consists of: first, "offenses covered by [C]hapter 73 of the Federal criminal code"; or second, "any other Federal or State offense that involves (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding." *Id.* Notably, the BIA (again) explained that its definition was not new: "This definition is consistent with our prior holdings regarding the limited contours of the phrase 'obstruction of justice.'" *Id.* Based on this definition, the BIA once again "conclude[d] that [Valenzuela Gallardo's] conviction is categorically one . . . relating to obstruction of justice that renders him removable." *Id.* at 461.

In short, in *Valenzuela Gallardo III* the BIA effectively reiterated the same definition that it had consistently held since at least its 1997 *Batista-Hernandez* decision—with one small tweak. Dutifully attempting to be responsive to our court's *Valenzuela Gallardo II* decision, the BIA added the requirement that obstruction of justice be an attempt to interfere with an "investigation or proceeding that is ongoing, pending, *or reasonably foreseeable*." *Id.* at 460 (emphasis added). The avid and informed court-watcher

would be atremble with eager anticipation: how would the Ninth Circuit get around this one?  It seemed like the BIA had gone the extra mile this time.

Pass the popcorn.

On appeal, our court began by purporting to describe the BIA's history defining "obstruction of justice."  But the panels' view—like that of its predecessor in *Valenzuela Gallardo II*—was distorted and detached from reality, painting our court as a beacon of consistency and the BIA as fickler than Tom Brady in retirement:

> In an en banc precedential decision issued over two decades ago, the [BIA] held that "an offense relating to obstruction of justice" is defined by the federal obstruction of justice offenses listed under that title in 18 U.S.C. §§ 1501–18, almost all of which require a nexus to an ongoing criminal proceeding or investigation. *Matter of Espinoza-Gonzalez*, 22 I. & N. Dec. 889, 892–94 (BIA 1999) (en banc).  Our court approved that definition as applied to a state misdemeanor conviction for rendering criminal assistance. *Hoang v. Holder*, 641 F.3d 1157, 1164–65 (9th Cir. 2011).

> Since then, in this very case, the BIA has twice changed that settled definition, each time expanding it in different ways to encompass the crime for which Agustin Valenzuela Gallardo was convicted: accessory to a felony in violation of [CPC] § 32.

*Valenzuela Gallardo v. Barr* ("*Valenzuela Gallardo IV*"), 968 F.3d 1053, 1056 (9th Cir. 2020).

Clearly our court was laying the foundation for something drastic. After all, the basis for our decision in *Valenzuela Gallardo II*—unconstitutional vagueness—was no longer on the table. *See id.* at 1067 ("We agree that [*Marinello v. United States*, 138 S. Ct. 1101 (2018)] settles any concern that defining obstruction of justice to include interference with a 'reasonably foreseeable' proceeding is unconstitutionally vague."). But desperate times call for desperate measures, and our court was desperate. The BIA had proven a resilient foe, apparently missing our not-so-subtle insistence that *we* really, really like *our* crabbed interpretation of "relating to obstruction of justice" over the BIA's—*Chevron* be damned. With the rationales from all our cases in shambles, it was obvious that if we continued to pretend deference to the agency, we would never get our way. So we just stopped pretending.

Despite having previously determined at least three times that § 1101(a)(43)(S) is *ambiguous* about the definition of "an offense relating to obstruction of justice," *Renteria-Morales*, 551 F.3d at 1086; *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 860 (9th Cir. 2008); *Hoang II*, 641 F.3d at 1160, 1160 n.3; *see also Valenzuela Gallardo II*, 818 F.3d at 815, our court—tapping into a deep reservoir of creativity—now discerned that the statute is in fact "*unambiguous* in requiring an ongoing or pending criminal proceeding, and the [BIA's] most recent interpretation is at odds with that unambiguous meaning," *Valenzuela Gallardo IV*, 968 F.3d at 1062 (emphasis added).[8] Fully aware that

---

[8] To my knowledge, no other circuit agrees with our court's volte-face. The First Circuit recently held that "the generic federal definition

this might seem inconsistent, our court doubled down on our historical revisionism:

> We did not previously have occasion to opine on this point because, prior to its first precedential opinion below, *see Valenzuela Gallardo*, 25 I. & N. Dec. 838, the BIA consistently construed obstruction of justice offenses as requiring a nexus to an ongoing proceeding.

*Id.* at 1062–63.

Based on a fanciful determination that "an offense relating to obstruction of justice unambiguously required a nexus to an ongoing or pending proceeding or investigation," our court held that the second prong of the BIA's definition "cannot stand." *Id.* at 1068. And because CPC § 32 "encompasses interference with proceedings or investigations that are not pending or ongoing," it "is not a categorical match with obstruction of justice under

---

of 'an offense relating to obstruction of justice' unambiguously does *not* require a nexus to a pending or ongoing investigation or judicial proceeding." *Silva v. Garland*, 27 F.4th 95, 98 (1st Cir. 2022) (emphasis added). And even "assuming § 1101(a)(43)(S) is ambiguous," the First Circuit concluded the BIA's definition in *Valenzuela Gallardo III* was "reasonable." *Id.* at 113. The Third Circuit has likewise determined that an offense "relating to obstruction of justice" is unambiguous—but in exactly the opposite way our court says. *Denis v. Att'y Gen.*, 633 F.3d 201, 209 (3d Cir. 2011). The Fourth Circuit determined that § 1101(a)(43)(S) "is at least ambiguous as to whether the phrase 'relating to obstruction of justice' requires the obstruction of an ongoing proceeding." *Pugin v. Garland*, 19 F.4th 437, 449 (4th Cir. 2021). And like the Third Circuit, it concluded that the BIA's definition in *Valenzuela Gallardo III* was "reasonable." *Id.* at 449.

§ 1101(a)(43)(S).” *Id.* at 1069.  So we granted Valenzuela Gallardo’s petition for review.  *Id.*

\*    \*    \*

Our court’s series of illogical and inconsistent maneuvers are intentionally hard to follow, so to briefly recap: In *Hoang II*, our court interjected a brand-new nexus requirement—interference with an ongoing proceeding or investigation—into the BIA’s definition of “obstruction of justice.”  641 F.3d at 1164.  No other court has insisted on such a requirement.  And after the BIA *explicitly* rejected that new nexus requirement, *see Valenzuela Gallardo I*, 25 I. & N. Dec. at 841, our court tried a different tact: treating the BIA’s old definition as “new” so that we could hold it unconstitutionally vague without appearing to be inconsistent with our prior precedents, *see Valenzuela Gallardo II*, 818 F.3d at 819–20.  On remand, the BIA tried once more to appease us, “clarifying” its definition but again rejecting our nexus requirement.  *See Valenzuela Gallardo III*, 27 I. & N. Dec. at 460.  With our prior rationale—unconstitutional vagueness—no longer an option, our court was forced to employ a different type of inconsistency.  In *Valenzuela Gallardo IV*, we suddenly decided that § 1101(a)(43)(S) was unambiguous—despite previously repeatedly holding that it was ambiguous—and that the BIA’s definition was inconsistent with the statute’s newly unambiguous meaning.  *See* 968 F.3d at 1062.  All the while our court gaslit the BIA and pretended it was the agency that was changing its mind, when in fact, it was our court that at each step replaced our old rationale with something new— each time more farfetched than the last, and often inconsistent with aspects of our prior rationales.  And in doing so we created and then continually deepened a circuit split.

## C. This Case

That brings us to this case, where unfortunately the majority's decision continues the ugly trajectory set by prior panels. Notably, the majority does not attempt to defend our indefensible precedents. But while maintaining a healthy degree of separation from the faulty rationales underlying those precedents, the majority nonetheless wraps itself in them as dictating the result in this case.

Somewhat surprisingly, given the tortured history recounted above, the government still had one argument left to it in this case. In *Valenzuela Gallardo III*, the BIA provided a two-part definition with two different ways that a crime might constitute "an offense relating to obstruction of justice": first, "offenses covered by [C]hapter 73 of the Federal criminal code"; and second, "any other Federal or State offense that involves (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable by the defendant, or in another's punishment resulting from a completed proceeding." 27 I. & N. Dec. at 460. As the majority acknowledges, *Valenzuela Gallardo IV* addressed only the second prong, foreclosing any argument for the government under that definition. But here we are free to consider and apply the first prong of the BIA's definition—that is, whether CPC § 136.1(b)(1) is "covered by" Chapter 73, namely, 18 U.S.C. § 1512(b)(3).

The Government has squarely raised this issue before our court. The majority claims that because "the BIA did not

analyze" the issue, we cannot address it.[9]  But "[w]e do not remand a case to the BIA where only legal questions remain and these questions do not invoke the [BIA's] expertise and where all relevant evidence regarding the conviction [has] been presented to the BIA in earlier proceedings." *See Diaz-Quirazco v. Barr*, 931 F.3d 830, 846 (9th Cir. 2019) (cleaned up).  This is such a case.  Indeed, by devoting more than six pages of its opinion to this exact issue, the majority demonstrates that it is willing to ignore any purported inability to consider whether CPC § 136.1(b)(1) is a categorical match with § 1512(b)(3)—so long as the analysis reaches a preferred result.  But in doing so, we continue our court's history of distorting caselaw—this time, California's—to reach that result.

"The categorical approach prescribes a three-step process for determining whether an offense is an 'aggravated felony.'" *Ho Sang Yim v. Barr*, 972 F.3d 1069, 1077 (9th Cir. 2020).  "First, we must identify the elements of the generic federal offense." *Id.*  "Second, we must identify the elements of the specific crime of conviction." *Id.*  "Third, we compare the statute of conviction to the generic federal offense to determine whether the specific crime of conviction meets the . . . definition of an aggravated felony." *Id.* (cleaned up).  "There is a categorical match only if the statute's elements are the same as, or narrower than, those of

---

[9] The majority avoids addressing whether the first prong of the BIA's definition—"offenses covered by [C]hapter 73 of the Federal criminal code"—is a reasonable interpretation of "an offense relating to obstruction of justice" under § 1101(a)(43)(S).  I would decide this issue.  And I would conclude—like other circuits—that it is a "reasonable" interpretation of the statute.  *See Silva*, 27 F.4th at 98; *Pugin*, 19 F.4th at 449.

the generic offense." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) (cleaned up).

The majority starts out by correctly noting that CPC § 136.1(b)(1) requires that "(1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials." *People v. Upsher*, 155 Cal. App. 4th 1311, 1320 (2007). By comparison, § 1512(b)(3) requires that the defendant (1) "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[d] another person . . . or engage[d] in misleading conduct toward another person" (2) "with the intent to hinder, delay, or prevent the communication to a law enforcement officer" (3) "of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3).

The majority finds a mismatch with only the first of § 1512(b)(3)'s elements: "Because CPC § 136.1(b)(1) only requires the defendant specifically intend to 'prevent or dissuade a person' from reporting a crime, without any requirement of malice, it is broader than . . . § 1512(b)(3), which requires use of intimidation, threats, misleading conduct, or corrupt persuasion." According to the majority, because CPC § 136.1(b)(1) has no malice requirement, an individual could be convicted under CPC § 136.1(b)(1) for *innocently* preventing or dissuading another person from reporting a crime, without satisfying the "corruptly persuades" requirement of § 1512(b)(3). Thus, the majority concludes, the two are not a categorical match.

While I agree with the majority that § 1512(b)(3) does not proscribe "innocent persuasion," where the majority gets it wrong is in concluding that CPC § 136.1(b)(1) reaches innocent persuasion, when California precedent explicitly

says it does not. As multiple California courts have observed, CPC § 136.1(b)(1) proscribes only "culpable conduct."

"There are two ways to show a realistic probability that a state statute exceeds the generic definition." *See Lopez-Aguilar*, 948 F.3d at 1147 (cleaned up). The majority attempts both. "First, there is not a categorical match if a state statute expressly defines a crime more broadly than the generic offense." *Id.* "In identifying the elements of the statute of conviction, 'we consider not only the language of the state statute, *but also the interpretation of that language in judicial opinions*.'" *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) (emphasis added) (quoting *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1054 (9th Cir. 2010)). It is the latter that the majority largely ignores.

In *People v. Navarro*, 212 Cal. App. 4th 1336 (2013), for example, the defendant David Navarro argued that CPC § 136.1(b)(1) "violate[d] the state and federal constitutions by impermissibly inhibiting free speech" and "also suggest[ed] the statute [was] 'fatally uncertain' or vague." *Id.* at 1347. The California Court of Appeal disagreed. As it explained, CPC § 136.1(b)(1) "has been limited in its application to persons who intentionally 'prevent or dissuade' a victim or witness from reporting a crime." *Id.* at 1351 (cleaned up) (citing *People v. McDaniel*, 22 Cal. App. 4th 278, 284 (1994)). "This focus on the mental state of the perpetrator and his or her intent to affect or influence a potential witness's or victim's report *limits the statute's reach by distinguishing culpable conduct from innocent conversation* and restrains use of its provisions to inhibit protected speech." *Id.* (emphasis added). The court rejected Navarro's attempt to support his argument with a "number

of hypotheticals" that "involve[d] innocent behavior." *Id.* at 1352.[10]  Specifically, the court explained that

> [t]here is no reason to believe persons engaged in conduct of the type [Navarro] posits are in substantial danger of prosecution under the statute.  The statute prohibits statements specifically intended to induce a witness or victim to withhold evidence of a crime from law enforcement officials. Ordinary citizens discussing the criminal justice system and the pros and cons of becoming involved in a police investigation *would not run afoul of the law*.

*Id.* (emphasis added).

This same point was recently reaffirmed in *People v. Brackins*, 37 Cal. App. 5th 56 (2019), where the state court

---

[10] Navarro argued that CPC § 136.1(b)(1)

> would preclude an attorney from "advising a client to file a civil lawsuit for damages in response to a crime"; prohibit a store manager from "directing employees to call the parents of first-time shoplifters under the age of [eighteen] instead of reporting such incidents to the police"; and prevent citizens from "expressing their opinion about which crimes warrant government intervention, and which do not," "attempting to prevent a friend from reporting a small theft to the police by expressing the opinion that it will be more trouble and paperwork than it's worth," or "suggesting that the problem of criminal activity be handled privately with an apology, with amends being made, or some other way."

*Navarro*, 212 Cal. App. 4th at 1352 (cleaned up).

again observed that there is "[n]o . . . concern" that CPC § 136.1(b) criminalizes innocent behavior. *Id.* at 67.

Thus, California courts have made it clear enough that CPC § 136.1(b)(1) does not proscribe "innocent persuasion" as the majority imagines. Rather, CPC § 136.1(b)(1) criminalizes only "culpable conduct." *Navarro*, 212 Cal. App. 4th at 1351. This is consistent with § 1512(b)(3)'s requirement of "corrupt persuasion," which we have interpreted to require only a "consciousness of wrongdoing." *United States v. Doss*, 630 F.3d 1181, 1189 (9th Cir. 2011), *as amended on reh'g in part* (Mar. 15, 2011). Consequently, CPC § 136.1(b)(1) and § 1512(b)(3) are a categorical match. *See Yim*, 972 F.3d at 1083.

The second way to "show a realistic probability that a state statute exceeds the generic definition" is by "point[ing] to at least one case in which the state courts applied the statute in a situation that does not fit under the generic definition." *See Lopez-Aguilar*, 948 F.3d at 1147 (cleaned up). Not surprisingly, the majority fails to point to a *single* case in which CPC § 136.1(b)(1) has been applied to "innocent persuasion." To the contrary, as just explained, California courts have made clear that CPC § 136.1(b)(1) would not apply to such conduct.

Recognizing that its preferred interpretation of California law flounders under the California cases *directly* addressing CPC § 136.1(b)(1), the majority resorts to a strangely *indirect* approach—relying on a California case construing a related yet altogether different offense: *People v. Wahidi*, 222 Cal. App. 4th 802 (2013). *Wahidi* concerns CPC § 136.1(a)(2), not subsection (b)(1). Despite this critical distinction, the majority nonetheless unconvincingly tries to extrapolate a rule supporting its view with respect to CPC § 136.1(b)(1). But even putting aside that there are

directly on-point California cases squarely blocking the majority's preferred interpretation of subsection (b)(1), its reliance on *Wahidi* is also based on clearly wrong reasoning. To understand why requires an accurate comparison of subsections (a)(2) and (b)(1).

CPC § 136.1(a)(2) proscribes "[k]nowingly and maliciously" attempting to prevent or dissuade "any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Thus, subsection (a)(2) requires a showing of "malice" (which, as the majority emphasizes, subsection (b)(1) does not). But in this context, the California legislature has provided a "unique" definition of "malice," much broader than the term's "traditional meaning." *Wahidi*, 222 Cal. App. 4th at 809; *see also* CPC § 136 (defining "malice" as "an intent to vex, annoy, harm, or injure in any way another person, *or to thwart or interfere in any manner with the orderly administration of justice*" (emphasis added)). In fact, California defines "malice" so broadly in this context that it arguably renders the term effectively meaningless. *See Wahidi*, 222 Cal. App. 4th at 807 (explaining that the provision's unique "definition of malice in [§] 136 appears to write the word 'maliciously' out of [§] 136.1"). It is precisely because of this extremely broad definition of malice that CPC § 136.1(a)(2) criminalizes conduct that the majority refers to as "innocent persuasion," and that admittedly falls outside the reach of § 1512(b)(3). *See id.* at 809. Thus, the majority's attempt to paint subsection (b)(1) as "broader than CPC § 136.1(a)" because it "*lacks* a malice requirement" has it exactly backwards—it is subsection (a)(2)'s uniquely broad malice element that allows it to criminalize "innocent persuasion," so attempting to transpose subsection (a)(2)'s overbreadth to (b)(1), which lacks the very element that causes (a)(2)'s overbreadth, is just faulty analysis.

In contrast to CPC § 136.1(a)(2), subsection (b)(1) proscribes "attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from . . . [m]aking any report of that victimization." Unlike CPC § 136.1(a)(2), subsection (b)(1) does not include a malice requirement. But this doesn't mean that subsection (b)(1) is necessarily broader than subsection (a)(2). Quite the opposite. CPC § 136.1(b)(1) "is a specific intent crime," which California courts have explained means that subsection (b)(1) proscribes only "culpable conduct." *Navarro*, 212 Cal. App. 4th at 1347, 1351; *see also Brackins*, 37 Cal. App. 5th at 66–67. Thus, in this respect—which is the only one that matters in this case—California courts have uniformly interpreted subsection (b)(1) to be *narrower* than subsection (a)(2). *See Brackins*, 37 Cal. App. 5th at 67 (explaining that unlike CPC § 136.1(a)(2), subsection (b)(1) "already described a sufficiently narrow offense that did not require further restriction by means of a malice requirement").

So the majority is doubly wrong. First, it just refuses to defer to the California courts, which have held that: (1) subsection (b)(1) is *narrower* than subsection (a)(2), *see id.* at 66–67; and (2) subsection (b)(1) does *not* criminalize innocent conduct, *see Navarro*, 212 Cal. App. 4th at 1353; *Brackins*, 37 Cal. App. 5th at 66–67. Second, it relies on its own twisted and flawed logic that, while perhaps not as audacious as our court's past machinations, is no less fallacious. The majority reasons that (1) because CPC § 136.1(b)(1) "*lacks* a malice requirement" it is necessarily "broader than" CPC § 136.1(a)(2) (which, as shown, is false); so (2) because CPC § 136.1(a)(2) criminalizes innocent conduct like that at issue in *Wahidi*, CPC § 136.1(b)(1) necessarily criminalizes innocent conduct as well. But Subsection (b)(1) is not "broader" than subsection

(a)(2), at least insofar as the criminalization of "innocent persuasion" is concerned.

When you remove the majority's flawed reliance on *Wahidi*, the majority is left with only its "legal imagination." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). That is not enough. The Supreme Court has made clear that a categorical mismatch "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case." *Id.* The majority does not try to make this showing, presumably because of the heinous nature of Cordero-Garcia's conduct. As a result, the majority "must at least point to . . . other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* It cannot.

Cordero-Garcia's conviction under CPC § 136.1(b)(1) is a categorical match for § 1512(b)(3), and the BIA did not error in concluding that Cordero-Garcia is removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

## II. CONCLUSION

I would deny Cordero-Garcia's petition for review, and thus respectfully dissent.